[No. D051802. Fourth Dist., Div. One. Oct. 26, 2007.]

J.N., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY
et al., Real Parties in Interest.

**COUNSEL**

Timothy Chandler, Alternate Public Defender, and Thomas Kisiel, Deputy Alternate Public Defender, for Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, John E. Philips and Gary C. Seiser, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Steven J. Carroll, Public Defender, Ana Espana and Rebecca R. Smith, Deputy Public Defenders, for Real Party in Interest Cyrus N.

Law Office of Bohdan & Doucette and Denise F. Bohdan, Guardian ad Litem, for Real Party in Interest Cyrus N.

Timothy Chandler, Alternate Public Defender, Sabrina Ceraola and Richard P. Siref, Deputy Alternate Public Defenders, for Real Party in Interest C.C.

**OPINION**

**HALLER, J.**—As a result of devastating brain injuries allegedly inflicted nonaccidentally on 11-month-old Cyrus N., the San Diego County Health and Human Services Agency (Agency) filed dependency petitions in the juvenile court on behalf of Cyrus and his two-year-old sister, Jenna N. After the detention hearing, but before Cyrus was adjudged a dependent of the court, the medical professionals treating Cyrus recommended the court authorize removal of his temporary breathing tube and issue a "Do Not Attempt

Resuscitation" (DNAR) order in the event Cyrus was unable to breathe on his own. Following a noticed hearing, and over the objections of Cyrus's parents, the court issued both orders.

We conclude the court had the authority to issue an order permitting removal of the breathing tube because a dependency petition had been filed, the evidence showed the treatment was medically necessary and the court properly balanced Cyrus's interests against those of his parents. However, we further conclude the court had no authority to issue a DNAR order because Cyrus had not been adjudged a dependent and the court had not conducted a full evidentiary hearing at which it made findings by clear and convincing evidence. Absent true findings made at a jurisdiction hearing, the court's authority was limited to ordering medical care that would sustain or improve Cyrus's condition and did not extend to decisions to withdraw or withhold life-sustaining medical treatment.

## FACTUAL AND PROCEDURAL BACKGROUND

Cyrus is the son of C.C. and J.N. (together, the parents). On September 16, 2007, Cyrus was taken to the hospital following a massive head injury. He was immediately intubated and then transported by ambulance to Rady Children's Hospital. Medical tests showed Cyrus had an extensive subdural hematoma covering the entire left hemisphere of his brain, retinal and vitreous hemorrhages in both eyes, but no skull fracture or impact site. The treating physicians determined Cyrus's injuries were highly suspicious for nonaccidental trauma, and were consistent with shaken baby syndrome. The injuries were inconsistent with C.C.'s explanation that Cyrus had fallen from the bathroom sink and hit his head on the linoleum floor. Cyrus remains in a coma and on life support.

Although the parents were informed Cyrus's brain injuries were life-threatening, they arrived at Children's Hospital between one and two hours after Cyrus arrived by ambulance, saying they got lost. When National City police detectives took C.C. home for an interview and reenactment of the incident later that day, they noticed the apartment smelled strongly of cleaning solution and appeared to have just been cleaned. The police arrested C.C. on charges of felony child abuse. J.N., who was at work when Cyrus's injuries occurred, refuses to believe C.C. caused Cyrus's injuries. J.N. posted bail for C.C. and she has returned to the family home. The district attorney has filed felony child abuse charges against C.C.

On September 19, 2007, Agency filed a petition in the juvenile court under Welfare and Institutions Code section 300, subdivision (e),[1] alleging C.C. inflicted severe physical abuse on Cyrus.[2] At a detention hearing, the court found a prima facie showing had been made under section 300, subdivision (e), detained Cyrus in out-of-home placement, and set a jurisdiction and disposition hearing for October 10, 2007.

On September 28, 2007, a hospital bioethics consultation team, consisting of a doctor, nurse and social worker, met with the parents regarding Cyrus's medical treatment plan. The consultation report noted Cyrus was "neurologically devastated with no reasonable hope of returning to normal or his previous level of functioning." The team reported Cyrus's "existence has become a biological/organic one, not a biographical one, in that he lacks current and projected social (interpersonal relationships) and intellectual life (consciousness and interaction) spheres of living." In the team's opinion, curative options had been exhausted and further medical treatment offered no benefit to Cyrus other than sustaining his organic life. The team recommended against life-sustaining medical treatment, which would require frequent and invasive procedures for the rest of Cyrus's life. The parents, however, want ongoing life-support efforts for Cyrus because they hope "he may survive on his own and have a miraculous recovery." The team recommended appointment of a guardian ad litem for medical decisions (medical guardian) based on the parents' potential conflict of interest and their inability to make decisions in Cyrus's best interests.

At the request of counsel appointed for Cyrus in the dependency proceeding, the court heard argument on the appointment of a medical guardian. The parents received notice of the hearing and were present with counsel. The court denied J.N.'s request for a contested hearing, suspended the parents' rights to make medical decisions for Cyrus and directed a medical guardian be appointed.

On October 10, 2007, the date set for the jurisdiction and disposition hearing, the court entertained the medical guardian's requests for an order to remove Cyrus's breathing tube and issuance of a DNAR directive.[3] The evidence before the court consisted of the medical guardian's report, her points and authorities supporting her requests for the court's orders, the

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Agency also filed a petition on behalf of Jenna, who is detained at Polinsky Children's Center.

[3] In her report, the medical guardian explained a DNAR directive would preclude the medical staff from using cardiopulmonary resuscitation or performing a tracheostomy to surgically insert a permanent breathing tube. Instead, Cyrus would be allowed to die a natural death following palliative care.

hospital bioethics consultation report and several medical reports, including results of a recent brain scan. The medical guardian stated Cyrus's brain function continues to deteriorate. She explained Cyrus's doctors recommend removing his temporary breathing tube because of the physical discomfort and risk of infection from having the tube remain in place. She further reported Cyrus had been medically ready for removal of the temporary breathing tube for more than two weeks, and the doctors believed there is a very high likelihood Cyrus will breathe independently if extubated. However, because there is a possibility Cyrus will not breathe independently, the doctors will not remove the breathing tube without a medical directive regarding resuscitation efforts. Consequently, the medical guardian argued, it was in Cyrus's best interests for the court to authorize a DNAR order in conjunction with removal of the breathing tube. Cyrus's counsel and Agency agreed with the medical guardian's position. The parents, who were present with counsel, opposed the requests without submitting any evidence. They argued the court could not make the requested orders because Cyrus had not yet been adjudged a dependent.

After considering the documentary evidence presented and hearing argument of counsel, the court granted the medical guardian's requests for an order allowing extubation and a DNAR directive. It found an order allowing extubation was medically necessary and in Cyrus's best interests and further found a DNAR directive was in Cyrus's best interests. The court set an evidentiary hearing for October 15 to address any further medical issues, including the status of Cyrus's medical condition following extubation and whether to continue the DNAR order. The court issued a one-day stay of its orders to allow a writ petition to be filed, and set a contested jurisdiction and disposition hearing for November 26 and 27.

J.N. filed a writ petition, arguing (1) the court had no authority to suspend his right to make medical decisions for Cyrus until Cyrus was declared a dependent; (2) due process entitled him to an evidentiary hearing before the court appointed a medical guardian for Cyrus; and (3) he was entitled to adequate time to review the medical guardian's requests and to an evidentiary hearing before the court issued its orders. We issued a stay of the orders authorizing removal of the breathing tube and issuance of a DNAR directive, and requested responses from the parties. After receiving responses, we issued a *Palma* notice informing the parties we were considering issuing a peremptory writ in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893].)[4]

---

[4] The day before this opinion was filed, we were informed Cyrus had been extubated and is breathing on his own. Although that action has rendered some of the issues before this court moot, the case remains pending and poses issues of broad public interest that are likely to recur. Thus, we have exercised our inherent discretion to resolve them. (See *Laurie S. v.*

## DISCUSSION

### I

*The Juvenile Court Had No Authority to Issue an Order to Withhold or Withdraw Life-sustaining Medical Treatment for Cyrus*

In *In re Christopher I.* (2003) 106 Cal.App.4th 533, 548 [131 Cal.Rptr.2d 122] (*Christopher I.*), the court addressed the appropriate "standards to apply when deciding whether to withhold or withdraw life-sustaining medical treatment from a child who is a dependent of the juvenile court." In that case, the juvenile court had declared Christopher a dependent and had removed him from parental custody based on findings he sustained severe physical injuries inflicted nonaccidentally by his father, and his mother failed to protect him. (*Id.* at pp. 540–541.) As a result of his injuries, Christopher was neurologically devastated and in a persistent vegetative condition with no cognitive function and no hope for any meaningful recovery. His life was sustained by a ventilator and a gastrointestinal tube. (*Id.* at pp. 539, 543.) Christopher's mother, over his father's objections, sought authorization for a "Do Not Resuscitate" order and withdrawal of Christopher's life-sustaining medical treatment. (*Id.* at p. 541.) Following a contested evidentiary hearing, the juvenile court found by clear and convincing evidence it was in Christopher's best interests to remove him from the ventilator. (*Id.* at pp. 546–548.)

On appeal, the court discussed the juvenile court's authority to consider and rule on withdrawal of Christopher's life-sustaining medical treatment, and concluded such authority derived from section 362, subdivision (a): " 'When a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court.' " (*Christopher I., supra*, 106 Cal.App.4th at pp. 554–555, quoting § 362, subd. (a).) The court held the juvenile court's statutory authority allowing it "to make decisions regarding medical treatment *for dependent children within its jurisdiction* necessarily includes decisions to refuse or withdraw medical treatment, including life-sustaining medical treatment." (*Christopher I.*, at p. 555, italics added.) The court reviewed other relevant provisions of the Welfare and Institutions Code and noted no statute restricts the juvenile court's authority to make all reasonable orders relating

---

*Superior Court* (1994) 26 Cal.App.4th 195, 199 [31 Cal.Rptr.2d 506].) We leave for a later day resolution of issues arising from the hospital's apparent disregard of this court's stay issued on October 11, 2007.

to medical treatment once a child has been declared a dependent. (*Id.* at pp. 555–556.) We are in full agreement with the holding in *Christopher I.*

A. *The Juvenile Court's Authority to Order Necessary Medical Care for Cyrus Before a Declaration of Dependency Is Controlled by Section 369, Subdivision (b)*

Unlike the minor in *Christopher I., supra,* 106 Cal.App.4th 533, Cyrus has not been adjudged a dependent child under section 300 and there have not yet been findings based on evidence at a jurisdiction hearing that Cyrus suffered serious physical harm nonaccidentally inflicted by C.C. Thus, section 362, subdivision (a) does not control as it did in *Christopher I.* Rather, the controlling statute is section 369, subdivision (b), which allows the court to intervene when a minor, who has not yet been declared a dependent, is in need of medical treatment and there is no parent capable or willing to authorize that treatment. Section 369, subdivision (b) provides: "Whenever it appears to the juvenile court that any person concerning whom a petition has been filed with the court is in need of medical, surgical . . . or other remedial care, and that there is no parent . . . capable of authorizing or willing to authorize the remedial care or treatment for that person, the court, upon the written recommendation of a licensed physician and surgeon . . . , and after due notice to the parent . . . , may make an order authorizing the performance of the necessary medical, surgical . . . or other remedial care for that person."

Agency, minor's counsel and the medical guardian argue that once a dependency petition has been filed on behalf of a minor, section 369, subdivision (b) gives the juvenile court authority to make all medical decisions on a minor's behalf, even DNAR directives. We disagree.

The clear import of section 369, subdivision (b) is to permit medical decisions to be made for a minor upon the filing of a dependency petition. It recognizes the practical need to allow the court to make decisions that are in the minor's best interests, and is consistent with the overall objective of the dependency scheme to protect minors until they can safely be returned to a parent. (See *Sarah M. v. Superior Court* (2005) 36 Cal.4th 998, 1008 [32 Cal.Rptr.3d 89, 116 P.3d 550].) But the focus of that provision is on treatment that is necessary to improve, sustain or preserve a child's medical condition. Section 369, subdivision (b) permits the court to authorize the *performance* of necessary medical care (i.e., medical treatment to sustain life or improve the patient's condition); it does not permit the court to authorize the *nonperformance* of medical care (i.e., a DNAR directive or withdrawal of life-sustaining medical treatment). The language "or other remedial care" used in section 369, subdivision (b) supports this interpretation because it allows the performance of medical care that is intended to be corrective or curative, not life-threatening.

In contrast to the court's broad authority under section 362, subdivision (a) to make " 'any and all reasonable orders' " for a dependent child, including decisions to withdraw life-sustaining medical treatment (*Christopher I., supra*, 106 Cal.App.4th at pp. 554–555), the court's authority under section 369, subdivision (b) is not so far-reaching when a minor's dependency is unadjudicated, the request to authorize medical treatment is contrary to the parents' wishes and the requested treatment will inevitably result in the minor's death. Absent true findings made at a jurisdiction hearing, the court's authority is necessarily limited to ordering medical care that will sustain or improve the minor's condition, not end it. (§ 369, subd. (b).) After a minor has been adjudged a dependent, the court acts as *parens patriae* and its authority to make decisions on behalf of the minor is unquestionably broad. (*In re Sade C.* (1996) 13 Cal.4th 952, 989 [55 Cal.Rptr.2d 771, 920 P.2d 716]; *Christopher I., supra*, 106 Cal.App.4th at p. 557.) Before that adjudication, the court's authority over medical decisions is limited by section 369, subdivision (b).

B.  *The Court Could Properly Authorize Removal of Cyrus's Breathing Tube, but Not a DNAR Directive*

At the hearing on October 10, 2007, the medical guardian made two requests: (1) an order to remove Cyrus's temporary breathing tube; and (2) the issuance of a DNAR directive. The uncontradicted evidence showed the breathing tube was no longer medically necessary, it posed an increasing risk of serious complications and discomfort for Cyrus, and there was a high likelihood (80 to 90 percent chance) Cyrus would breathe independently once the tube was removed.[5] After considering the evidence and carefully balancing the interests of all parties, the court found the performance of this requested procedure was medically necessary and in Cyrus's best interests. The evidence fully supports this finding. Moreover, because this procedure would likely maintain and improve Cyrus's condition, the court had the authority under section 369, subdivision (b) to make this order.

By contrast, the court did not have the authority to order the requested DNAR directive in the event Cyrus cannot breathe independently following removal of the temporary breathing tube. Unlike the removal of the breathing tube, which was shown to be medically necessary, this order withholds treatment, is not remedial, and will inevitably result in Cyrus's demise. Until a minor is declared a dependent of the court following a jurisdiction hearing, the court's authority to issue medical orders over a

---

[5] According to the medical reports, Cyrus has a strong cough and gag reflex, and good lung condition.

parent's objection is limited to ordering the hospital to *provide* necessary medical treatment, not *withhold* treatment with the inevitable consequence of ending the minor's life.

## C. The Court Cannot Issue a DNAR Directive Without Considering Appropriate Factors at a Full Evidentiary Hearing

■ Only after a minor has been adjudged a dependent under section 300 does the juvenile court have the authority to consider matters relating to withholding or withdrawing life-sustaining medical treatment for that minor. (*Christopher I.*, *supra*, 106 Cal.App.4th at pp. 554–557.) This includes a DNAR directive. When deciding whether to make such an order, the court must conduct a full evidentiary hearing, including the presentation of live testimony. (*Id.* at p. 553.) Although the court is authorized to issue curative or remedial medical orders based on declarations and medical reports presented at a noticed hearing, this alone is insufficient when the parents object to orders to withdraw or withhold life-sustaining medical treatment.

Agency, minor's counsel or the medical guardian has the burden of presenting qualified medical experts who must testify under oath and respond to cross-examination. In conducting the hearing, the court is to be guided by the minor's best interests, and must consider, analyze and weigh various factors, including: "(1) the child's present levels of physical, sensory, emotional and cognitive functioning; (2) the quality of life, life expectancy and prognosis for recovery with and without treatment, including the futility of continued treatment; (3) the various treatment options, and the risks, side effects, and benefits of each; (4) the nature and degree of physical pain or suffering resulting from the medical condition; (5) whether the medical treatment being provided is causing or may cause pain, suffering, or serious complications; (6) the pain or suffering to the child if the medical treatment is withdrawn; (7) whether any particular treatment would be proportionate or disproportionate in terms of the benefits to be gained by the child versus the burdens caused to the child; (8) the likelihood that pain or suffering resulting from withholding or withdrawal of treatment could be avoided or minimized; (9) the degree of humiliation, dependence and loss of dignity resulting from the condition and treatment; (10) the opinions of the family, the reasons behind those opinions, and the reasons why the family either has no opinion or cannot agree on a course of treatment; (11) the motivations of the family in advocating a particular course of treatment; and (12) the child's preference, if it can be ascertained, for treatment." (*Christopher I.*, *supra*, 106 Cal.App.4th at p. 551.) Finally, the court's decision must be supported by clear and convincing evidence, and the court must state its findings on the record, either orally in open court or in a written order. (*Id.* at p. 553.)

Because we have concluded the juvenile court cannot conduct a hearing addressing the propriety of a DNAR directive until it first determines whether Cyrus should be declared a dependent—and that hearing is presently set for November 26 and 27, 2007—we strongly encourage the juvenile court to expedite the jurisdiction hearing. This is appropriate given the gravity of the situation and Cyrus's fragile medical condition.

## II

### The Court Was Not Required to Conduct a Full Evidentiary Hearing Before Appointing a Medical Guardian

J.N. contends his due process rights were violated when the court failed to hold an evidentiary hearing on whether to appoint a medical guardian for Cyrus. The argument lacks merit. The juvenile court has discretion to appoint a guardian ad litem for a minor. (Code Civ. Proc., § 372.) The guardian ad litem is appointed merely to aid the court and enable it to protect the minor's rights by making decisions in the minor's best interests. (*Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 49 [54 Cal.Rptr.3d 13].) Due process is satisfied when the court provides the parent with an informal hearing and an opportunity to be heard on the issue. (*In re Sara D.* (2001) 87 Cal.App.4th 661, 671 [104 Cal.Rptr.2d 909] [guardian ad litem properly appointed for a parent who was deemed mentally incompetent to participate in proceedings].) At the informal hearing, the parent must be given the opportunity to respond, and there must be an explanation of the guardian ad litem's purpose and what authority will be transferred to that person. (*In re Enrique G.* (2006) 140 Cal.App.4th 676, 684 [44 Cal.Rptr.3d 724].)

Here, J.N. received notice through his attorney that minor's counsel would request a medical guardian for Cyrus. The request was based on the recommendation of the hospital bioethics consultation team, which concluded the parents had a potential conflict of interest and were unable to make decisions in Cyrus's best interests. The court conducted a hearing at which all parties participated regarding the medical guardian's appointment. Because J.N. received notice and had an opportunity to be heard, his due process rights were not violated.

## III

### A Peremptory Writ in the First Instance Is Proper

We conclude the juvenile court exceeded its authority in issuing the DNAR directive. Because the issue presents a case of "compelling temporal urgency"

requiring acceleration of the normal process, a peremptory writ in the first instance is proper. (*Ng v. Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961]; see *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1223 [23 Cal.Rptr.2d 397, 859 P.2d 96], disapproved on another ground in *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 724, fn. 4 [3 Cal.Rptr.3d 623, 74 P.3d 726]; Code Civ. Proc., § 1088.)

## DISPOSITION

Let a peremptory writ issue directing the superior court to vacate its order of October 10, 2007, authorizing removal of the breathing tube and issuance of a DNAR directive, and enter a new order, consistent with the views expressed in this opinion, authorizing only the removal of the breathing tube. In all other respects, the petition is denied. The stay issued by this court on October 11, 2007, is vacated. The opinion will be final immediately as to this court. (Cal. Rules of Court, rule 8.264(b)(3).)

Huffman, Acting P. J., and Irion, J., concurred.