[No. C060965. Third Dist. June 2, 2010.]

SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v.
MARCUS W., a Minor, etc., et al., Defendants and Appellants.

---

**COUNSEL**

Law Offices of Anthony V. Smith, Anthony V. Smith; Doris Bostick Law Office and Doris F. Bostick for Defendants and Appellants.

David Wooten, County Counsel, Ted Towle and Janine Molgaard, Deputy County Counsel, for Plaintiff and Respondent.

---

**OPINION**

**SCOTLAND, P. J.**—Marcus W. (the minor) has sickle cell anemia and was 16 years old when he was ordered by the juvenile court to undergo periodic blood transfusions to prevent him from suffering a third stroke and possibly death. The minor, one of Jehovah's Witnesses, opposed the transfusions as contrary to his religious beliefs.

On appeal, the minor argues the order must be reversed because the application did not "set forth the legal basis for its request for a one-year court order compelling [the minor] to undergo blood transfusions." In any event, the minor contends the juvenile court erred in not "recogniz[ing] that mature adolescents may possess the competency and the capacity to make their own medical decisions in exercise of their right of bodily self-determination" (known in some jurisdictions as the "mature minor doctrine") and in depriving the minor of the opportunity to cross-examine a medical witness and to call and examine his own medical witness and his minister.

We conclude the juvenile court lacked jurisdiction to issue the order because the requirements of Welfare and Institutions Code section 369 were not met. (Further section references are to this code unless otherwise specified.) Thus, we need not address the minor's other claims of error.

██ As we will explain, section 369 provides the juvenile court with jurisdiction to order the performance of necessary medical care for a minor *only* when (1) the minor has been taken into temporary custody pursuant to

section 305, or is a dependent of the court pursuant to section 300, or is named in a petition filed to declare the minor a dependent of the court, (2) a licensed health care professional recommends that the minor needs medical, surgical, dental, or other remedial care, and (3) the minor's parent, guardian, or person standing in loco parentis is unwilling or incapable of authorizing such care.

Here, the minor had not been taken into temporary custody pursuant to section 305, the San Joaquin County Human Services Agency (the Agency) had not filed a section 300 petition to declare the minor a dependent child of the court, and the minor had not already been adjudicated a dependent child of the court. Thus, the juvenile court did not have jurisdiction to order the minor to undergo blood transfusions against his will and over the objection of his parents.

## BACKGROUND

On October 21, 2008, the Agency filed an ex parte application with the juvenile court, seeking permission for the minor's treating physician to "administer blood transfusions to [the minor] without parental consent as medically necessary until OCTOBER 1, 2009," at which time "the treating physician must provide an update concerning [the minor's] need for further transfusions," and in the meantime, "should any bloodless treatment alternatives become available that would meet the minor's needs," the minor's father and the Jehovah's Witness Hospital Liaison Committee would be "promptly notified and the alternatives utilized with the father's consent."

Attached to the application was a letter from the minor's treating physician, Dr. Keith C. Quirolo, asking for a court order to continue blood transfusion treatment. Dr. Quirolo's letter stated the following: The minor "has sickle cell anemia" and has suffered "two strokes and has developed moya moya disease due to the cerebral ischemia that was caused by the strokes." "[C]hronic blood transfusion" is the "only definitive therapy for stroke in sickle cell disease"; however, because the minor and his parents expressed opposition to blood transfusions based on their religious beliefs, Dr. Quirolo attempted "alternative medical therapies," such as hydroxyurea and decitabine. Neither drug increased the minor's level of hemoglobin F enough to prevent strokes. Indeed, the minor suffered a stroke while taking hydroxyurea and had to be returned to blood transfusion treatment. Following three months of decitabine treatment, without sufficient increase in hemoglobin F levels, Dr. Quirolo concluded that returning to blood transfusion treatment was the only definitive means of preventing another stroke and possibly death. Dr. Quirolo stressed: "I am not willing to wait for him to have another event while I, and the family, are waiting for this medication to increase his hemoglobin F."

The minor and his parents filed opposition to the application, requested an evidentiary hearing to determine whether the minor is a "mature minor possessing the competency and the responsibility to make his own medical decisions," and asked the juvenile court to dismiss the application "on the basis that [the minor] is a mature minor with the capacity of giving informed consent."

Counsel for the Agency responded that, while some states have recognized a mature minor doctrine, allowing sufficiently mature minors to make their own medical decisions, such a doctrine "has not been recognized in California." Indeed, argued county counsel, the fact the Legislature has enacted specific statutes allowing certain minors to make their own medical decisions—e.g., emancipated minors (see Fam. Code, § 7050, subd. (e)) and minors seeking medical care related to sexually transmitted diseases, treatment of drug or alcohol abuse, and mental health care (see Fam. Code, § 6926)—indicates "the failure to enact a broad 'mature minor' statute is not an oversight, but rather an intentional limit on the rights of minors to make their own health care decisions." Accordingly, county counsel asserted, "until such time as [the minor] reaches the age of full and legal discretion, the court [should] exercise its interest as *parens patriae*, to [e]nsure that [he] gets appropriate treatment."

At the hearing on the application, the minor's attorney conceded "California does not have a mature minor doctrine," but disagreed with county counsel's assessment that the specific statutes allowing certain minors to make their own medical decisions in certain situations indicated the Legislature intended to preclude the courts from straying outside the confines of these provisions in recognition of a broader mature minor doctrine. In the alternative, the minor's attorney argued that the juvenile court should hear from the minor, "as [a] due process measure," to allow him to express his feelings concerning the blood transfusions.

Without ruling on whether the mature minor doctrine is viable in California, the juvenile court decided to hold a short hearing to hear from the minor and his parents.[1] Both the minor and his father testified that the minor began blood transfusion treatment following his first stroke at the age of four. As the father elaborated, monthly blood transfusions were ordered by the court because the minor's father and mother, as Jehovah's Witnesses, would not consent to the treatment. According to the father, the minor initially opposed the blood transfusions simply to go along with his parents' wishes. However, by the age of seven, when the minor became more active in the congregation and "[h]is comprehension of bible education started to get a little bit better," he was more able to make an independent decision concerning blood transfusions.

---

[1] The juvenile court did not want to hear from Dr. Quirolo because it had already "heard from him in terms of the [minor's medical] needs and type of treatment that he's doing."

The minor testified that he was a junior in high school with above-average grades. He explained it was his choice to become one of Jehovah's Witnesses, and he opposed the blood transfusions because "it states in the bible how our God, Jehovah, how he doesn't want us to take blood." He expressed an understanding of sickle cell anemia and the potentially dire consequences of refusing blood transfusion treatment, i.e., the risk of another stroke and death. Nevertheless, he felt it was important to come to court to oppose the blood transfusions in order to demonstrate to Jehovah that he was not disobeying his God.

The juvenile court granted the application and signed the order permitting Dr. Quirolo to resume blood transfusion treatment as medically necessary until October 1, 2009.[2] As the court explained, it was concerned that the minor's decision to refuse blood transfusion treatment was not entirely independent based on the fact he "has been making a decision that he doesn't want blood since he was about seven years old."

The minor's attorney filed a request for rehearing, arguing for the first time that the ex parte application "failed to set forth the legal basis for its request for a one-year court order compelling [the minor] to undergo blood transfusions that are abhorrent to his religious sensibilities"; the minor was "denied the right to confront and cross-examine Dr. Keith C. Quirolo"; and the minor was "denied the opportunity to present medical evidence as to his illness and as to his maturity and decision-making capacity," through the testimony of Dr. Elliott D. Vichinsky and the minor's minister, Francis W. Dapaah.

The request for rehearing was denied, with the juvenile court explaining the issues raised in the request for rehearing were not raised at the hearing on the ex parte application. The minor filed a timely notice of appeal.

## DISCUSSION

Although the minor did not raise the issue in the trial court or on appeal, we requested supplemental briefing on whether the juvenile court had jurisdiction to issue an order compelling the minor to undergo blood transfusions.

■ The lack of fundamental jurisdiction is not subject to the forfeiture doctrine, which ordinarily precludes an appellant from raising on appeal an

---

[2] Although the expiration of the appealed order on October 1, 2009, technically renders the issues raised in this appeal moot, the case "poses issues of broad public interest that are likely to recur." (*J.N. v. Superior Court* (2007) 156 Cal.App.4th 523, 530, fn. 4 [67 Cal.Rptr.3d 384].) We therefore exercise our inherent discretion to resolve these issues. (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 199 [31 Cal.Rptr.2d 506].)

issue that he or she did not raise in the trial court. (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1427 [72 Cal.Rptr.3d 340].)

■ Section 369 sets forth the procedure to obtain a court order authorizing the performance of necessary medical, surgical, dental, and other remedial care in certain situations involving minors. It states in pertinent part:

"(a) Whenever any person is taken into temporary custody under Article 7 (commencing with Section 305) and is in need of medical, surgical, dental, or other remedial care, the social worker may, upon the recommendation of the attending physician and surgeon or, if the person needs dental care and there is an attending dentist, the attending dentist, authorize the performance of the medical, surgical, dental, or other remedial care. The social worker shall notify the parent, guardian, or person standing in loco parentis of the person, if any, of the care found to be needed before that care is provided, and if the parent, guardian, or person standing in loco parentis objects, that care shall be given only upon order of the court in the exercise of its discretion.

"(b) Whenever it appears to the juvenile court that any person concerning whom a petition has been filed with the court is in need of medical, surgical, dental, or other remedial care, and that there is no parent, guardian, or person standing in loco parentis capable of authorizing or willing to authorize the remedial care or treatment for that person, the court, upon the written recommendation of a licensed physician and surgeon or, if the person needs dental care, a licensed dentist, and after due notice to the parent, guardian, or person standing in loco parentis, if any, may make an order authorizing the performance of the necessary medical, surgical, dental, or other remedial care for that person.

"(c) Whenever a dependent child of the juvenile court is placed by order of the court within the care and custody or under the supervision of a social worker of the county in which the dependent child resides and it appears to the court that there is no parent, guardian, or person standing in loco parentis capable of authorizing or willing to authorize medical, surgical, dental, or other remedial care or treatment for the dependent child, the court may, after due notice to the parent, guardian, or person standing in loco parentis, if any, order that the social worker may authorize the medical, surgical, dental, or other remedial care for the dependent child, by licensed practitioners, as may from time to time appear necessary.

"(d) Whenever it appears that a child otherwise within subdivision (a), (b), or (c) requires immediate emergency medical, surgical, or other remedial care in an emergency situation, that care may be provided by a licensed physician and surgeon or, if the child needs dental care in an emergency situation, by a licensed dentist, without a court order and upon authorization of a social worker. The social worker shall make reasonable efforts to obtain the consent of, or to notify, the parent, guardian, or person standing in loco parentis prior to authorizing emergency medical, surgical, dental, or other remedial care. 'Emergency situation,' for the purposes of this subdivision means a child requires immediate treatment for the alleviation of severe pain or an immediate diagnosis and treatment of an unforeseeable medical, surgical, dental, or other remedial condition or contagious disease which if not immediately diagnosed and treated, would lead to serious disability or death."

The parties, in their response to our request for supplemental briefing, agree that section 369 does not apply in this case.

The minor was not taken into temporary custody pursuant to section 305, which authorizes a peace officer, without a warrant, to take a minor into temporary custody when there is reasonable cause to believe the minor comes within the jurisdiction of the juvenile court pursuant to section 300,[3] and the

---

[3] Section 300 states the juvenile court may adjudicate a minor to be a dependent child of the court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian" (*id.,* subd. (a)); "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse" (*id.,* subd. (b)); "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care" (*id.,* subd. (c)); "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse" (*id.,* subd. (d)); "[t]he child is under the age of five years and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child" (*id.,* subd. (e)); "[t]he child's parent or guardian caused the death of another child through abuse or neglect" (*id.,* subd. (f)); "[t]he child has been left without any provision for support; physical custody of the child has been voluntarily surrendered pursuant to Section 1255.7 of the Health and Safety Code and the child has not been reclaimed within the 14-day period specified in . . . that section; the child's parent has

minor has an immediate need for medical care, or is in immediate danger of physical or sexual abuse, or the physical environment or fact the minor has been left unattended poses an immediate threat to the minor's health or safety. Thus, subdivision (a) of section 369 does not apply.

A juvenile dependency petition had not been filed to obtain jurisdiction over the minor pursuant to section 300. Consequently, subdivision (b) of section 369 does not apply. (*J.N. v. Superior Court, supra,* 156 Cal.App.4th at p. 532.)

The minor had not been declared a dependent child of the court. Therefore, subdivision (c) of section 369 does not apply.

For the reasons stated above, the minor did not fall within the provisions of subdivisions (a), (b), or (c) of section 369 and, in any event, the Agency concedes that an " 'emergency situation,' " as defined by the statute, did not exist. Hence, subdivision (d) of section 369 does not apply.

█ In sum, the juvenile court lacked jurisdiction to act pursuant to section 369 because the statutory requirements had not been met due to the Agency's failure to file a juvenile dependency petition pursuant to section 300, subdivision (b), asserting the minor was at substantial risk of suffering serious physical harm as a result of his parents' refusal, for religious reasons, to provide him with necessary medical treatment.

Nevertheless, the Agency claims "there is other statutory authority for the Superior Court to make an order for medical care." In its view, the court had jurisdiction to issue a writ of mandate pursuant to section 1085 of the Code of Civil Procedure to compel the minor's parents to fulfill their "duty of trust and a station in society which statutorily requires them to provide for their

---

been incarcerated or institutionalized and cannot arrange for the care of the child; or a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child, the whereabouts of the parent are unknown, and reasonable efforts to locate the parent have been unsuccessful" (*id.,* subd. (g)); "[t]he child has been freed for adoption by one or both parents for 12 months by either relinquishment or termination of parental rights or an adoption petition has not been granted" (*id.,* subd. (h)); "[t]he child has been subjected to an act or acts of cruelty by the parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from an act or acts of cruelty when the parent or guardian knew or reasonably should have known that the child was in danger of being subjected to an act or acts of cruelty" (*id.,* subd. (i)); or "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions" (*id.,* subd. (j)).

children." This duty, the Agency argues, is derived from Penal Code section 270, which makes it a crime for "a parent of a minor child" to "willfully omit[], without lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child," and is also derived from Penal Code section 273a, which makes it a crime for a person, "under circumstances or conditions likely to produce great bodily harm or death," to "willfully cause[] or permit[] any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering," or for a person who has the care and custody of a child to "willfully cause[] or permit[] the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered" (Pen. Code, § 273a, subd. (a)).[4]

■ We need not decide whether those statutes would authorize the issuance of a writ of mandate, as the Agency contends. We simply point out that a writ of mandate "will not issue if there is a plain, speedy and adequate remedy in the ordinary course of law" (*City of Oakland v. Superior Court* (1996) 45 Cal.App.4th 740, 750 [53 Cal.Rptr.2d 120]; see Code Civ. Proc., § 1086) and that section 369 sets forth a plain, speedy, and adequate remedy for the Agency to obtain a court order compelling the minor to undergo periodic blood transfusions to prevent him from suffering a third stroke and possibly death.

As a prerequisite to seeking the order pursuant to section 369, the Agency simply had to file a dependency petition alleging that the minor came within the jurisdiction of the juvenile court pursuant to section 300, subdivision (b). (See *In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169–1170 [265 Cal.Rptr. 342] [upholding juvenile court jurisdiction where a minor's parents treated her for serious burns with only an "herbal treatment" that even they recognized "had been completely ineffective" and "despite the doctor's statements about the risk of infection"]; see also *In re Eric B.* (1987) 189 Cal.App.3d 996, 1000, 1004–1006 [235 Cal.Rptr. 22] [upholding continuation of the minor's dependency where the minor's parents refused chemotherapy and radiation treatment despite the doctor's concern that surgical removal of the minor's left eye had not completely removed the cancer].)[5]

---

[4] Although the Agency miscites this statute as Penal Code section 273, it is apparent from the Agency's argument (and the fact Pen. Code, § 273 makes it a crime to pay or receive money or any other thing of value for the placement of, or consent to, a child for adoption) that the Agency is relying on Penal Code section 273a, not 273.

[5] Contrary to the Agency's argument, *Dority v. Superior Court* (1983) 145 Cal.App.3d 273 [193 Cal.Rptr. 288] does not support its position. There, an infant child was admitted to an emergency room, placed on a respirator, and later declared to be brain dead. (*Id.* at p. 275.) Based on evidence that the parents might have been responsible for the infant's injuries and undisputed testimony that the infant was in fact brain dead, the trial court granted a petition to appoint a guardian pursuant to Probate Code section 2100 et seq., and directed the

The Agency makes the policy argument that the filing of a section 300, subdivision (b) petition should be excused because such a petition "with its stigma of parental abuse or neglect [has been] found to be offensive to the parents of Jehovah's Witness children and even to the medical professionals seeking the order for the transfusion," and has caused "additional emotional trauma during a time of stress for the family." The Agency states that, in the "early 1990s," the Hospital Liaison Committee for Jehovah's Witnesses in Stockton asked for implementation of a "system by which medical professionals seeking authorization for a court order for blood transfusions could obtain an order without a § 300 petition being filed, but while still providing . . . full due process of a hearing before the Judge who would make the order." After "consultation with the Juvenile Court, [such] a system was created" and was later used in this case.

The problem is that, although well intended, the "system" created in San Joaquin County does not comply with the statutory scheme and results in a juvenile court acting without subject matter jurisdiction.

■ Simply put, absent a constitutional flaw in a statutory scheme, courts do not have the power to excuse failure to follow a process mandated by the Legislature. In other words, the policy argument advanced by the Agency is one that should be made to the Legislature not to a court. (*In re Brent F.* (2005) 130 Cal.App.4th 1124, 1130 [30 Cal.Rptr.3d 833]; *Williams v. County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1334 [275 Cal.Rptr. 302]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788].)

The Legislature has established a procedure by which the jurisdiction of the juvenile court may be invoked to authorize necessary medical care for minors whose parents are unwilling, for religious reasons or otherwise, to provide such care. Here, because the Agency failed to follow the requisite procedure, the juvenile court lacked the power to issue the order for periodic blood transfusions in this case. Thus, the order is invalid.

---

guardian to authorize removal of the respirator. (145 Cal.App.3d at p. 276.) The appellate court denied the parents' writ petition seeking to prohibit removal of the respirator. "Where important decisions remain to be made about the child, and where the parents have demonstrated an inability to act in the best interest of the child, it is proper to appoint a guardian to make the necessary decisions." (*Id.* at pp. 276, 278–280.) However, the court noted "Welfare and Institutions Code section 300 et seq. would seem to provide a more appropriate vehicle for expeditiously resolving these problems." (*Id.* at p. 278, fn. 3.) *Dority* has no application to this case, which did not involve a request for the appointment of a guardian.

## DISPOSITION

The order compelling the minor to undergo periodic blood transfusions is reversed.

Sims, J., and Hull, J., concurred.