Filed 12/1/25  In re C.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re C.V., a Person Coming Under the Juvenile Court Law.

| | |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.Z.,<br><br>    Defendant and Appellant. | E085638<br><br>(Super.Ct.No. J301488)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Meghan Grim, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

M.Z. (mother) appeals from an order of the juvenile court granting a request from San Bernardino County Children and Family Services (CFS) that C.V. (the child) be circumcised and undergo related surgical treatment to correct painful inflammation and curvature of the penis that could result in future pain and illness.  Mother contends the juvenile court did not properly consider her religious objection to the proposed surgery and that the record does not establish the treatment was necessary.  We find no abuse of discretion and affirm the order.

I.

FACTS AND PROCEDURAL BACKGROUND

The facts of the dependency itself are irrelevant to the limited issues involved in this appeal and need not be repeated here.  In September 2024, the juvenile court found true allegations of neglect and that the child was at risk of abuse, declared the child to be a dependent of the court, and ordered the child removed from his parents' custody and placed in the custody of CFS.  CFS was directed to provide the parents with reunification services, and the juvenile court set a six-month review hearing.

On February 7, 2025, CFS filed a request for specific nonroutine medical surgical treatment.  A supporting declaration from the child's treating physician, Dr. Chau, indicated the child had been diagnosed with penile chordee,[1] penile torsion, and dysuria.[2]

---

[1] Curvature of the penis.  (Stedman's Concise Medical Dict. (2d ed. 1994) p. 192, col. 1.)

[2] Difficult or painful urination.  (Stedman's Concise Medical Dict., *supra*, at p. 314, col. 1.)

2

The recommended treatment was penile chordee repair, phalloplasty, and circumcision, under general and causal anesthesia, to correct the curvature of the penis and remove the foreskin. Dr. Chau opined that, without the surgery, the child was at risk for urinary tract infections, inflammation of the penis, cancer, erectile dysfunction, and infertility. Progress notes submitted with the request stated the child was suffering from recurrent balanoposthitis[3] leading to dysuria. The child had "severe penile adhesions around coronal sulcus, penile torsion counterclockwise, and chordee."

Mother filed a written objection and asked that the juvenile court set a hearing on CFS's request.

Before the hearing, CFS filed an information update indicating the child was experiencing discomfort and pain because of his condition. The caregiver confirmed the child had experienced pain, and indicated the condition caused the child's penis to easily become infected. The issue would not resolve itself, and the procedure would need to be completed during the child's lifetime.

At the hearing, counsel for the child's father indicated father (who did not appear) believed the child's symptoms were the result of "a hygiene issue" that had not previously existed, and that "good hygiene would avoid the necessity of the operation." Mother's attorney indicated mother (who also did not appear) opposed the surgery for "religious reasons," but counsel provided no further specifics. Counsel stated mother believed the child's symptoms were "manageable" with proper hygiene, "she never had

---

[3] Inflammation of the penis. (Stedman's Concise Medical Dict., *supra*, at p. 114, col. 1.)

3

any issues with providing or maintaining his hygiene when he was in her care," her older son was uncircumcised, and she believed the child would suffer "undue pain" from the surgery and she would prefer an alternative treatment for the child.

Counsel for the child agreed with the recommendation for the surgery, and argued the people "most qualified to make a determination with regard to whether the procedure is necessary is the caregiver who is in contact with the minor every day and can report on the uncomfortableness and pain of the minor currently, and the doctor who is a medical professional to determine if this surgery should be completed now or at a later time, but will be necessary either way." Counsel asked the court to find the treatment was in the child's best interest "to alleviate the issues that have arisen as soon as possible[,] over the objection of the parents."

Counsel for CFS argued that contrary to the suggestion of the parents, the child's symptoms were not merely the result of poor hygiene. Instead, the child was experiencing discomfort and pain from penile chordee and torsion that required surgery. Therefore, counsel asked the court to grant the request "so the child can stop experiencing the pain that it's suffering."

The juvenile court stated it had read and considered the request and supporting evidence. After summarizing the child's diagnosis and Dr. Chau's opinion regarding the necessity of surgery to correct the child's condition, the court found the child was "suffering from discomfortable pain" and that the cause was not simply poor hygiene. Therefore, the court granted the request over the parents' objections.

4

Mother timely appealed.[4]

## II.

## DISCUSSION

"After a minor has been adjudged a dependent, the court acts as parens patriae and its authority to make decisions on behalf of the minor is unquestionably broad." (*J.N. v. Superior Court* (2007) 156 Cal.App.4th 523, 533.) Under Welfare and Institutions Code[5] section 362, the court may determine what is in the best interest of the child and enter appropriate orders for the protection of that child. (*In re S.F.* (2023) 91 Cal.App.5th 696, 725.)

"[T]he court is expressly authorized to make 'any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment.' (§ 362, subd. (a); see § 369, subd. (c) [authorizing the court to order medical, surgical, dental or other remedial care or treatment for a dependent child].) These provisions and others in the Welfare and Institutions Code 'have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children.'" (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1196, quoting *In re Carmen M*. (2006) 141 Cal.App.4th 478, 486.) "'*No statute restricts*

---

[4] Father did not separately file a notice of appeal, and therefore he is not a party to this appeal.

[5] All further undesignated statutory references are to the Welfare and Institutions Code.

*that authority.'"* (*In re S.P.* (2020) 53 Cal.App.5th 13, 17, quoting *In re Christopher I.* (2003) 106 Cal.App.4th 533, 555.)

The juvenile court's orders under section 362 are subject to reversal for clear abuse of discretion. (*In re F.P.* (2021) 61 Cal.App.5th 966, 975; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.) "'The abuse of discretion standard warrants that we apply a very high degree of deference to the decision of the juvenile court.' [Citation.] We determine whether the order exceeded the bounds of reason and, in so doing, we cannot substitute our judgment for that of the juvenile court." (*In re R.M.* (2025) 111 Cal.App.5th 119, 134-135.)

First, mother contends the juvenile court abused its discretion because the child was not suffering from a medical emergency and the circumcision and surgery were not "medically necessary." We are not persuaded. A social worker may authorize "immediate *emergency* medical, surgical, or other remedial care in an *emergency* situation" to a dependent child without a court order. (§ 369, subd. (d), italics added.) In contrast, section 369, subdivision (c) does not predicate court-ordered "medical, surgical, dental, or other remedial care" for a dependent child on the presence of a medical emergency. (See generally *San Joaquin County Human Services Agency v. Marcus W.* (2010) 185 Cal.App.4th 182, 188-190.)

Nor does section 245.5 assist mother. That section provides the juvenile court may direct orders to the parents or guardians of a dependent child "as the court deems *necessary and proper* for the best interests" of the child, including directing the provision

6

of medical treatment. (§ 245.5, italics added; see *In re Christopher I.*, *supra*, 106 Cal.App.4th at p. 555.) Medical treatment need not be "lifesaving" or essential to address a medical emergency to qualify as necessary and proper. (Cf. *Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard* (2019) 38 Cal.App.5th 421, 427 ["in broad terms a 'medically necessary' procedure must include a procedure that is a generally recognized treatment for a medical condition presented by the patient"].)

Likewise, mother's suggestion that circumcision was merely an "elective" procedure is unavailing. Although CFS indicated the procedure would have to be performed at some point in the child's life, Dr. Chau opined it was necessary to prevent future pain and illnesses such as cancer and infertility, and the clear implication was the procedure should be performed sooner rather than later. "There is usually 'no better evidence of the state of one's health' than the medical opinions from the patient's current treating doctor." (*In re S.P.*, *supra*, 53 Cal.App.5th at p. 18, quoting *Gunn v. Employment Development Dept.* (1979) 94 Cal.App.3d 658, 664, fn. 6.) In the absence of contrary evidence, Dr. Chau's medical opinion amply supports the court's implied finding that the treatment was in the best interest of the child.[6]

Last, mother argues the juvenile court failed to adequately consider her religious objection to the procedure. Mother's counsel informed the juvenile court that mother

---

[6] Although the juvenile court here did not expressly state it found the medical treatment was "in the best interest of the child," we must affirm the implied best interests finding if it is supported by substantial evidence in the record. (*J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935 ["We draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence"].)

7

objected to the surgical treatment for "religious reasons," but counsel provided no further specifics. A parent's objection to medical treatment for a dependent child based on religious beliefs is "certainly entitled to some consideration in the juvenile court's evaluation of the issue," even when "the factual basis for [the] objection to the [treatment] was not supported by any evidence. (Cf. § 16509 ['[c]ultural and religious child-rearing practices and beliefs which differ from general community standards shall not in themselves create a need for child welfare services unless the practices present a specific danger to the physical or emotional safety of the child'].)" (*In re Matthew M.*, *supra*, 88 Cal.App.5th at p. 1197, fn. omitted.) "But . . . those beliefs are not outcome determinative." (*Ibid.*)

"'Several relevant factors must be taken into consideration before a state insists upon medical treatment rejected by the parents. The state should examine the seriousness of the harm the child is suffering or the substantial likelihood that he will suffer serious harm; the evaluation for the treatment by the medical profession; the risks involved in medically treating the child; and the expressed preferences of the child. Of course, the underlying consideration is the child's welfare and whether his best interests will be served by the medical treatment.'" (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1005, quoting *In re Phillip B.* (1979) 92 Cal.App.3d 796, 802; see *In re Petra B.* (1989) 216 Cal.App.3d 1163, 1171-1172.)

Before granting CFS's request, the juvenile court stated it had read and considered the declaration of Dr. Chau and the child's progress notes, summarized the child's

diagnosis and the fact the child was currently experiencing pain and discomfort, acknowledged Dr. Chau's opinion about the most appropriate treatment and that the child was at risk of experiencing future pain and illness if the condition remained untreated, and found the child's condition was not merely an issue of poor hygiene. And, although the court did not expressly address mother's *religious* objection, the court generally acknowledged the parents had objected to the treatment. In the absence of contrary evidence, we must presume the juvenile court properly considered all relevant factors, including mother's religious concerns. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

In sum, we find no abuse of discretion on the record before us.

III.

DISPOSITION

The order directing medical treatment for C.V. is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                                J.

We concur:

RAMIREZ
            P. J.

FIELDS
            J.

9