[No. B016282. Second Dist., Div. Two. Apr. 10, 1986.]

JENNIFER JONES, Plaintiff and Appellant, v.
JIMMY JONES, JR., Defendant and Appellant.

**COUNSEL**

Arthur H. Lampel for Plaintiff and Appellant.

Allred, Maroko, Goldberg & Ribakoff, Gloria Allred and Nathan Goldberg for Defendant and Appellant.

**OPINION**

**ROTH, P. J.—**

### I

This appeal raises the following question of first impression: May a child who has reached the age of majority and who is not physically or mentally disabled bring an action against her father to compel him to pay for her college education? Because we find that neither the relevant California statutes nor case law precedent can now be read so as to impose such an obligation upon a parent, we affirm the trial court's order sustaining without leave to amend the demurrer to the complaint.

Plaintiff reached the age of majority when she turned 18 years old on January 25, 1985.[1] Very soon thereafter, she initiated the instant litigation against her father. Her second amended complaint states that following her parents' divorce in 1980, she lived with each of them at different times. She graduated from high school in June 1985. She now seeks to obtain a journalism degree at Northern Arizona State University at an estimated total cost of $25,000 although she has failed to allege either that she has applied for admission there or that her application there has been accepted. She is presently employed part time. She offers to continue to work if and when she commences her college studies but asserts that the income derived as a result will be insufficient to cover her costs. Because her mother, who now totally supports her, allegedly cannot afford to pay for the proposed college education without her ex-husband's assistance, plaintiff demands that her father contribute $3,600 a year. Plaintiff asserts that he could do so "without undue financial burden" because "his household income totals almost $60,000 a year."

Plaintiff offers two legal theories to support this novel claim. First, she relies upon Civil Code section 206 which provides: "It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding. A person who is receiving aid to the aged shall be deemed to be a person in need who is unable to maintain himself by work."

The statute has its roots in Elizabethan poor law from almost 400 years ago and has been a part of California law since the Civil Code was adopted in 1872. (*Bryant* v. *Swoap* (1975) 48 Cal.App.3d 431, 475 [121 Cal.Rptr. 867].) Its imposition upon parents of a duty to support their child continues even after the child reaches the age of majority,[2] on the rationale of protecting the public from the financial burden of supporting an individual whose parents are able to provide the requisite support (4 Markey, Cal. Family Law Practice and Procedure (1984) Duty of Parent to Support Indigent Adult Child, § 61.20).

However, by its terms, the statute only comes into play if the child is unable to be self-maintaining by work. As such, courts have traditionally found that before the statute can impose an obligation of support upon the

---

[1] In California, the age of majority is 18 (Civ. Code, § 25.1, subd. (b).)

[2] A trial court is not empowered to make an order requiring a parent to support a child who has reached majority (see Civ. Code, §§ 4351, 4700, 4800.7) absent an application of Civil Code section 206 or an agreement of the parties to pay for such support (Civ. Code, § 4700.9). (But see discussion of Civ. Code, § 196.5, *infra*.)

parent, the child must first demonstrate an inability to be self-supporting because of a mental or physical disability or proof of inability to find work because of factors beyond the child's control. (*Rebensdorf* v. *Rebensdorf* (1985) 169 Cal.App.3d 138, 146 [215 Cal.Rptr. 76] and cases cited therein (dis. opn. of Franson, Acting P. J.).)

At bench, plaintiff theorizes that she is a "person in need" because she needs and expects a college education and is unable to pay for it herself.[3] We cannot agree.

Only one case has held that Civil Code section 206 can give rise to a lawsuit by a child over 18 against his parent for support for an education. In *Rebensdorf* v. *Rebensdorf, supra,* 169 Cal.App.3d 138, the plaintiff had reached 18 but had not yet finished high school because his parents had moved frequently during his childhood, thus interrupting his education. His parents were now divorced. Relying, inter alia, upon Civil Code section 206, plaintiff sought financial assistance from his father until he was able to graduate from high school. The trial court granted the father summary judgment but a divided Court of Appeal reversed the ruling, holding *not* that plaintiff was entitled to relief as a matter of law but merely that plaintiff was not barred from seeking such relief as a matter of law. (*Id.,* at p. 144.) In so concluding, the majority placed great reliance upon the importance of a high school education which the State of California provides free of charge to all residents. (*Id.,* at pp. 144-145.) However, in answering the concern that its holding could very well open the floodgates of litigation to disgruntled children seeking indefinite funding of an open-ended education, the majority apparently limited its holding to a high school education and excluded from its reach a college degree. (*Ibid.*)

Thus, quite apart from the fact that were we writing on a clean slate we would be more inclined to adopt the views expressed in Acting Presiding Justice Franson's dissenting opinion (*id.,* at pp. 145-147), the majority's opinion in *Rebensdorf* certainly does not provide direct support for the position advocated by plaintiff herein.

Thus, Civil Code section 206 cannot form the basis of plaintiff's action.

---

[3]This allegation and undoubtedly many others could appropriately be made to support the premise upon which plaintiff predicates her cause of action, to wit, she feels the need of such education and one or both of her parents have the money to pay for it.

If children not minors can base a cause of action predicated on *their* needs against either one of their parents to allocate cash to their needs, why can't they dictate to their respective parents at any age, irrespective of whether such parents are separated and/or living together, remarried, or widowed, but who severally and/or collectively have wealth, claims to satisfy such need and file lawsuits to meet such needs and/or file a contest of any will written which does not meet their needs as they and/or some court interprets such situations?

■ Alternatively, plaintiff relied upon Civil Code section 196 in her effort to impose liability upon her father for her proposed college education.[4]

Civil Code section 196 states: "The father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents."

Additionally, Civil Code section 196a provides: "The father as well as the mother of a child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor child, and in such action the court shall have power to order and enforce performance thereof, the same as in a suit for dissolution of marriage."

From these statutory provisions, plaintiff argues that her father has an obligation to help pay for her college education as this is something he can afford to do and something that he had previously encouraged her to do. We disagree.

At the outset, we note that these statutes are inapplicable since historically the term "child" utilized in Civil Code section 196 has been construed to mean "minor child." (*Rebensdorf* v. *Rebensdorf, supra,* 169 Cal.App.3d at p. 143, fn. 4 and cases cited therein.) As plaintiff has reached the age of majority, its provisions cannot apply to her.

This conclusion is buttressed by the terms of Civil Code section 196.5, enacted by the Legislature in 1985, which expressly limits to one particular situation the reach of the obligation of Civil Code section 196 to a child over 18 years of age.[5] The statute provides: "The duty imposed by Section 196 shall continue to exist as to any unmarried child who has attained the age of 18, is a full-time high school student, and resides with a parent, until such time as he or she completes the 12th grade or attains the age of 19, whichever first occurs. This obligation may be enforced in the manner described in Section 196a.

"This section does not apply to support agreements made or judgments entered before March 4, 1972. Nothing in this section shall be interpreted

---

[4]Plaintiff has abandoned her theory of breach of an oral contract, raised in her first amended complaint, which alleged that her father had promised to pay for her college education in return for her promise to perform to the best of her abilities in high school.

[5]The legislation which led to the enactment of Code of Civil Procedure section 196.5 was pending at the time the Court of Appeal decided *Rebensdorf.* (*Rebensdorf* v. *Rebensdorf, supra,* 169 Cal.App.3d at p. 143, fn. 4.)

so as to limit a parent's ability to agree to provide additional support or to limit the court's power to inquire whether such an agreement has been made." As such, it is apparent that the Legislature expressly contemplated that Civil Code section 196 would only apply to minors and that to the extent that an obligation devolves upon a parent to provide education to an adult child, it is limited to the completion of a high school education.[6]

Lastly, we note that a bill is currently pending in the Legislature to permit a court to order a parent to provide support for the education of an adult child "[u]pon a finding that but for the parents' legal separation or the dissolution of their marriage a parent would have provided support for the education or training of an adult child. . . ." (Sen. Bill No. 1129 (1985-1986 Reg. Sess.) The proposed law sets forth various factors the trial court is to consider in making such a determination. Thus, the fact that legislation has been proposed on the topic which is the very subject of this appeal is further evidence that the presently existing statutes cannot be reasonably construed as creating in plaintiff a present right to sue her father to obtain financial assistance for her college education.

Based on existing decisional and statutory law of California,[7] the trial court properly sustained without leave to amend defendant's demurrer to plaintiff's second amended complaint.[8]

## II

Concurrent with his filing of a demurrer, defendant sought attorney's fees and sanctions. Although the trial court eventually sustained defendant's demurrer without leave to amend, it denied without a statement of reasons the request for fees and sanctions.[9] Defendant's cross-appeal contests that ruling.

---

[6]In her reply brief, plaintiff cites for the first time the case of *In Re Marriage of Paul* (1985) 173 Cal.App.3d 913 [219 Cal.Rptr. 318] as support for her proposition. Plaintiff's reliance is misplaced. *Paul* merely held that the trial court erred when it failed to consider in evaluating wife's request for an increase in spousal support the fact that wife was paying for the college education of the parties' adult child. However, both *Paul* and one of the cases upon which *Paul* relied noted that the parent had no *legal* obligation to fund the college education of the adult child (see *In Re Marriage of Paul, supra*, 173 Cal.App.3d at p. 920; *In Re Marriage of Siegel* (1972) 26 Cal.App.3d 88, 93 [102 Cal.Rptr. 613]).

[7]Plaintiff has cited several out-of-state authorities to support her claim. Those cases are not pertinent to the resolution of the case at bench as they were based on statutory law different than that found in California.

[8]We therefore need not address defendant's claim that plaintiff's second amended complaint is also fatally defective for failure to name plaintiff's mother as an indispensable party.

[9]The superior court's subsequent order dismissing plaintiff's action did award defendant $481.55 in costs. (See Code Civ. Proc., § 1032.)

Code of Civil Procedure section 128.5 provides: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

The primary argument advanced by defendant in support of his request was that it was so clear that presently existing law did not support plaintiff's legal claim that plaintiff's action must therefore be deemed to be frivolous. In our earlier discussion we concluded that plaintiff's claim lacked precedential support. That, however, is not the equivalent of a finding that the action was frivolous within the meaning of Code of Civil Procedure section 128.5. Frivolous is defined as ". . . (A) totally and completely without merit or (B) for the sole purpose of harrassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b).) In view, generally, of the apparent continual trend in California law to create new causes of actions and the diverse approaches taken by other states on this subject, (*ante,* fn. 6) and, specifically, of the split opinion of the Court of Appeal in *Rebensdorf, supra,* we cannot say that the trial court abused its discretion in implicitly deciding that the underlying lawsuit, albeit novel, was neither frivolous nor in bad faith.[10] (See *In Re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651 [183 Cal.Rptr. 508, 646 P.2d 179]; *Atchinson, Topeka, & Santa Fe Ry. Co. v. Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 116-117 [189 Cal.Rptr. 208].)

 In the alternative, defendant requests that attorney's fees be awarded because he was the prevailing party in an action to enforce an obligation founded on Civil Code section 206.

The failure of Civil Code section 206 to make any mention of an award of attorney's fees should bar defendant's claim. (See Code Civ. Proc., § 1021.) However, case law has permitted a trial court to award such fees, both pendente lite and on a final judgment, to a party who has prevailed in seeking support based upon Civil Code section 206 (*Paxton v. Paxton* (1907) 150 Cal. 667, 672 [89 P. 1083]; *Kruly v. Superior Court* (1963) 216 Cal.App.2d 589, 592-594 [31 Cal.Rptr. 122]; *Radich v. Kruly* (1964) 226 Cal.App.2d 683, 688 [38 Cal.Rptr. 340]). Defendant concedes that no case has yet held that a party who successfully resists such an action is entitled to attorney's fees; nonetheless, he urges that such a reciprocal right is implicit. We disagree.

---

[10]Defendant's ancillary claim that plaintiff's actions were "solely intended to cause unnecessary delay" (Code Civ. Proc., § 128.5, subd. (a)) is simply not supported by the record. The complaint was filed on March 7, 1985. Pretrial litigation followed which resulted in a dismissal less than six months later, on September 5, 1985.

A successful litigant in a Civil Code section 206 action can be awarded attorney's fees because he brought an action to enforce a duty established by statute and a trial court not only has jurisdiction to enforce those statutory obligations but also has the power to make all orders necessary for that purpose, including an order for attorney's fees. (*Paxton* v. *Paxton, supra,* 150 Cal. at p. 692.) As the gravamen of the action is that a party who is unable to support himself, and thus presumably indigent, is forced to sue an individual who has a legal obligation to furnish such support, if that complaining party is successful, it logically follows that he should be awarded attorney's fees. But based on the foregoing, we see no significant public interest that would be furthered by allowing a party who defeats a Civil Code section 206 action to recover attorney's fees.

### III

The trial court's orders of September 5, 1985, dismissing plaintiff's action and denying defendant's motion for sanctions and attorney's fees are affirmed.

Compton, J., and Beach, J., concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied June 25, 1986.