Filed 11/3/15

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of CECILIA and DAVID W. | |
| | D066918 |
| CECILIA W., | |
| Respondent, | (Super. Ct. No. D439588) |
| v. | |
| DAVID W., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Paula S. Rosenstein, Judge.  Reversed and remanded with directions.


Linda Cianciolo for Appellant.

Dunne & Dunne and Anthony J. Dunne for Respondent.

David W. appeals from a postjudgment order establishing a duty of parental support to former spouse Cecilia W. for their adult child, Robert W.,[1] pursuant to Family Code section 3910.[2]  Section 3910, subdivision (a) provides:  "The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means."

David contends the trial court lacked jurisdiction, applied incorrect legal standards, and did not have substantial evidence to support its order finding Robert to be incapacitated from making a living and without sufficient means.[3]  We find jurisdiction but agree the trial court failed to apply correct legal standards and there is no substantial evidence to support its order.  We reverse the order and remand with directions.

I

FACTUAL AND PROCEDURAL BACKGROUND

The parties divorced in 1998 when Robert was 11 years old.  On December 30, 1998, the trial court entered a judgment dissolving the marriage, which incorporated the parties' marital settlement agreement (MSA).  The MSA provided Cecilia with physical custody of Robert and required David to pay monthly child support until the earliest of Robert's completion of high school, reaching age 19, or certain other events.

---

[1]     We refer to the parties by their first names as is the custom in family law matters. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1.)

[2]     All further statutory references are to the Family Code unless otherwise specified.

[3]     David sets forth as a separate argument that Robert is not incapacitated or without sufficient means, but merely addresses the legal standards and sufficiency of the evidence.  As the argument is duplicative, we do not address it separately.

After the MSA child support obligation expired, Cecilia made no formal request for child support until December 2012. At that time, Cecilia filed a Request for Order seeking, in part, child support. Cecilia claimed Robert, then 24 years old, was "not currently capable of earning a living or being self-supporting" and it was "uncertain he ever will be."[4] David moved to join Robert as a party, which Cecilia opposed. The family court commissioner granted the joinder request.

The matter came on for a full-day hearing in December 2013.[5] The trial court admitted Robert's psychologist, Charles Hogan, Ph.D., as an expert witness on Robert's health issues and how they impacted him day-to-day. Cecilia, David, and Robert also testified. The witness testimony covered Robert's conditions, education, daily life, and potential capacity for work. We discuss each in turn.

Robert suffers from Tourette's syndrome and attention deficit hyperactivity disorder (ADHD). Tourette's symptoms include affected motor skills, tics, and accompanying issues, including learning disabilities and emotional management issues. Robert exhibits all of these symptoms when stressed. Robert's attention issues mean he has great difficulty focusing continuously on a task.

Dr. Hogan believes Robert's medical and psychological issues affect his daily life, resulting in a "constant struggle" without external support, schedules, and feedback to

---

4    Cecilia also provided a copy of Robert's neuropsychological evaluation report, discussed in footnote 6, *post*.

5    All subsequent hearing references are to the December 2013 hearing unless otherwise specified.

3

help him self-regulate emotion and to "talk him down from high levels of anxiety and panic attacks that significantly get in the way of performing." Dr. Hogan has treated Robert for his Tourette's side effects and ADHD; medical approaches treat the Tourette's itself. The treatment plan assists Robert with his ADHD medication and provides cognitive behavioral methods to cope with emotional self-regulation. Robert also sees Dr. Hogan when he becomes stressed and overwhelmed.

Robert graduated from high school on time. He then attended Southwestern College, a community college. There, Robert earned two associates degrees and achieved a 3.3 grade point average, but took five years to graduate due to class withdrawals. Robert also needed accommodations, including intervention by Disabled Student Services, less distracting test settings, extra time for tasks, and tutors (including private math tutoring). In addition, he was admitted to urgent care and the emergency room twice during one semester because panic attacks caused tachycardia on one occasion and cardiac arrest on the other.

Since August 2012, Robert has been enrolled at the University of California, San Diego (UCSD).[6] He has had similar accommodations, including Disabled Student Services intervention, quiet test facilities, and flexibility for test completion time, as well

---

[6] Before Robert started at UCSD, Dr. Hogan referred him to Roger Perez, Ph.D., who conducted a neuropsychological evaluation to provide an updated skill assessment and assist with academic accommodations and intervention plans. Dr. Perez prepared a neuropsychological evaluation report. Neither party entered the report into evidence at the hearing or called Dr. Perez as a witness.

as use of a laptop and tape recorder in class. He also has had a private Spanish tutor. Robert generally has earned B-range grades at UCSD.

Robert lives on campus with roommates and resides with Cecilia on weekends, holidays, and during the summer. Robert has a car and drives himself.[7] Robert advocates for himself, but Cecilia remains involved, including attending meetings with Disabled Student Services, tracking his e-mail and schedule, and doing his laundry.

Robert receives approximately $30,000 annually in financial aid from UCSD, of which $5,000 is loans. Cecilia continues to pay for certain expenses, including Robert's Spanish tutor, cell phone bill, vehicle costs (e.g., parking, insurance, and gas), clothing, books, and groceries.[8] Cecilia has not applied for disability or Social Security benefits for Robert.

The testimony regarding whether Robert is unable to find work and be self-supporting—the critical issue here—is sparse. Dr. Hogan is not a vocational expert and has not researched whether Robert could get a job in San Diego. David sought a vocational evaluation, which apparently was denied, and Cecilia made no similar

---

[7] Robert earned his driver's license at age 20 after initially failing the written test multiple times.

[8] David gave Robert his first car and helped pay for Robert's math tutor. It is unclear whether Robert now has a different car and, if so, who paid for it.

request.[9]  Cecilia confirmed Robert has never been assessed as to whether he could get a job.

The only evidence on employability concerns Robert's potential ability to work and suggests he has such potential.  Dr. Hogan believes Robert is intellectually capable of full-time work, but is concerned with his intermittent ability to regulate emotion and attention; he thinks these issues will be a "very major challenge" and put Robert at "high risk in trying to work effectively in a job on a consistent basis."  He is of the view Robert would have trouble in a stressful environment, but should be fine in a "low demand or low stress environment," depending on the job.  As for Robert's conditions, Dr. Hogan has experience determining whether ADHD patients can work and reported 50 percent of his adult ADHD patients can do so.  He lacks similar expertise with Tourette's but thinks if Robert was not symptomatic, it should not affect getting a job (and reported the last time Robert was symptomatic in his office was "not in recent memory").  Dr. Hogan believes Robert can write a resume, complete a job application, and sit for an employment interview, and confirmed he was not saying Robert could not work.  In fact, he counseled Robert on his career goals and developed job seeking skills with him.

Cecilia believes and hopes Robert will one day become self-supporting.  She also believes Robert could get a minimum wage job if he was not attending school.  She has

---

[9]     The record reflects David filed a Request For Order for a vocational evaluation on May 13, 2013, but does not appear to contain the disposition.  David indicated the request was denied.

been advised Robert cannot go to school and work at the same time and does not want him to do so.

The record likewise reflects David believes Robert could work. No professional has told him Robert is incapacitated. David and Cecilia discussed the possibility of Robert getting a part-time job if he was not taking a summer class at Southwestern College. He also talked to Robert about applying for a job; Robert expressed interest in applying "at a Game Stop store," but did not do so.

As for Robert himself, he has never applied for a job but plans to get one after completing school and has sought out career counseling. Robert would like a career in video game marketing or design, and participates in a weekly UCSD group that develops games and performs outreach to game companies. At the same time, Robert is not sure if he plans to work full time and has not taken video game courses because they require math.

At the conclusion of the hearing, the trial court stated it was "not sure" Cecilia met her burden, questioning whether there was "enough evidence on vocational abilities." Notwithstanding its concerns, the trial court found Robert was incapacitated, explaining the evidence supported a finding he could not work and go to school full time. As for Robert's ability to work, in general, the trial court found Robert's manner was atypical and was "going to make it very hard for him to find a job," his issues with focus and stress would "interfere with the ability to hold the job," and his ability to have a job earning $30,000 to $40,000 was "highly questionable." It concluded "the only evidence is that [Robert] could potentially get a minimum wage job, maybe, but that would

7

undoubtedly require ADA [Americans with Disabilities Act] accommodations," which it viewed as speculative.

The trial court then found Robert was without sufficient means, because he would lose the support he had if he was not in school. The trial court also found a lack of sufficient means because even if Robert could obtain minimum wage work, it would not permit his parents' standard of living. The trial court reached this finding by interpreting the support guideline discussion in *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139 (*Drake*), a section 3910 case, to reflect a legislative intent that children should share in their parents' standard of living.

In August 2014, the trial court issued further findings and orders (August 2014 Order). The trial court stated it found at the hearing "Robert is an adult disabled child."[10] On incapacity, the trial court largely reiterated its earlier findings. However, the trial court no longer found evidence of potential minimum wage employment, stating "while it was argued that Robert might be able to obtain a minimum wage job, the evidence did not support that finding." On insufficient means, the trial court focused on Robert's UCSD funds, concluding he lacked sufficient means because his current support was based on continued UCSD attendance. David timely appealed.

---

10    The transcript reflects only a trial court comment that some adult children in the case law "are far more disabled than is Robert," not a finding of disability.

8

II

DISCUSSION

A. *Jurisdiction*

David contends the trial court lacked jurisdiction to award child support, claiming (1) support terminated pursuant to the MSA and jurisdiction terminates without an agreement to extend support, and (2) Robert purportedly does not live with Cecilia, rendering child support unavailable.[11] We find jurisdiction.

First, as David acknowledges, section 3910 requires parents to support adult children under certain circumstances. Section 2010 provides jurisdiction to award such support. (§ 2010 ["In a proceeding for dissolution of marriage . . . the court has jurisdiction to . . . render any judgment and make orders that are appropriate concerning . . . [¶] . . . [¶] (c) [t]he support of children for whom support may be ordered . . . ."]; *In re Marriage of Lambe & Meehan* (1995) 37 Cal.App.4th 388, 391-393 [recognizing continuing jurisdiction over adult child support]; see also section 4001 ["In any proceeding where there is at issue the support of a . . . child for whom support is authorized under Section . . . 3910, the court may order either or both parents to pay an amount necessary for the support of the child."].)[12]

_____

11    Although David did not challenge jurisdiction below, subject matter jurisdiction is not subject to waiver and may be raised at any time. (*San Joaquin County Human Services Agency v. Marcus W.* (2010) 185 Cal.App.4th 182, 187-188; *In re Marriage of Oddino* (1997) 16 Cal.4th 67, 73.)

12    David also contends Cecilia did not previously request support under section 3910 and does not claim Robert as a tax dependent. However, he cites no guidance to suggest

9

Second, David provides no authority to show that parental residence is required for section 3910 jurisdiction. To the contrary, *Drake* found no error in crediting one parent with "full physical responsibility" in setting a section 3910 award, where the disabled adult child was not living with either parent. (*Drake*, *supra*, 162 Cal.App.4th at p. 1160.) *Edwards v. Edwards* (2008) 162 Cal.App.4th 136, upon which David relies, concerned a nondisabled adult child and found *Drake*, involving an incapacitated adult child, "completely inapposite." (*Edwards,* at p. 143.) Nevertheless, the record reflects Robert resides with Cecilia at least part of the time.

### B. *Legal Standards Regarding Child Support for Adult Children*

David contends the trial court applied incorrect legal standards in ordering support under section 3910. We agree.

#### 1. First Prong: Incapacitated from Working

The first prong of section 3910 requires the adult child be "incapacitated from earning a living." (*Id.*, subd. (a).) However, an adult child is only incapacitated from earning a living within the meaning of section 3910 if he or she demonstrates "an inability to be self-supporting because of a mental or physical disability or proof of inability to find work because of factors beyond the child's control." (*Jones v. Jones* (1986) 179 Cal.App.3d 1011, 1015 (*Jones*); accord, *In re Jessie V.* (1989) 214 Cal.App.3d 1619, 1623 (*Jessie V.*).)

---

either issue is relevant to jurisdiction, even assuming the latter were true (which is not clear from the record).

In the August 2014 order, the trial court concluded Robert was incapacitated based on the findings that Robert lacked the capacity to work and attend school at the same time, was disabled, had an odd affect that would impede finding a job and focus and stress issues that would interfere with holding one, and could not hold a minimum wage job (in contrast to its contrary finding at the hearing). These findings reflect the trial court did not apply the correct standards.

As an initial matter, whether Robert was unable to work and attend school at the same time is not the relevant incapacity for section 3910. Parents have no obligation to support an adult child, otherwise capable of working, while he or she pursues an education. (*Jones*, *supra*, 179 Cal.App.3d at p. 1015 [finding adult child was not a " 'person in need' " under predecessor statute, where she sought a college education but was unable to pay for it]; *Rebensdorf v. Rebensdorf* (1985) 169 Cal.App.3d 138, 146 (dis. opn. of Franson, J.) [in discussing predecessor statute, recognizing principle that individual "could have quit school and presumably gone to work"].)

Even to the extent the trial court purportedly focused on Robert's ability to work, it failed to do so in accordance with the applicable standards. In brief, it found Robert was disabled and his conditions would hamper him from finding and keeping employment. But the required showing is not disability, without more, or possible difficulties in the workplace. Rather, the inquiry should have been whether Robert was (1) unable to be "self-supporting," due to the purported disability, or (2) unable to "find work" due to factors outside his control. (*Jones*, *supra*, 179 Cal.App.3d at p. 1015.) The only trial

11

court findings addressing Robert's employability concerned his potential ability to hold minimum wage employment, and they were inconsistent.

We recognize there is a dearth of authority applying the incapacity standards, as section 3910 cases are uncommon and generally involve no dispute over capacity. (See, e.g., *Jones*, *supra,* 179 Cal.App.3d at p. 1013 ["not physically or mentally disabled"]; *Jessie V.*, *supra*, 214 Cal.App.3d at p. 1623 ["no indication" child was "physically or mentally disabled"]; *Drake*, *supra*, 53 Cal.App.4th at p. 1148 [chronic paranoid schizophrenia]; *Chun v. Chun* (1987) 190 Cal.App.3d 589, 592 ["emotionally disabled adult" child with 12-year-old maturity level].) We find where, as here, there is such a dispute, the incapacity standards require courts to focus not on the adult child's conditions and their potential impact on employment, but rather on his or her ability to find work or become self-supporting in light of such conditions. (*Jones,* at pp. 1014-1015.)[13]

2. Second Prong: Lack of Sufficient Means

The second prong of section 3910 requires the adult child to be "without sufficient means." (§ 3910, subd. (a).) "[T]he question of 'sufficient means' [is] resolved in terms of the likelihood a child will become a public charge." (*Drake*, *supra*, 53 Cal.App.4th at p. 1154.) " '[T]he duty to support children of any age is legislatively designed "to protect the public from the burden of supporting a person who has a parent . . . able to support

_____

[13]    Additionally, we note the trial court dismissed as speculative the claim that ADA accommodations could enable Robert to find work. We are unclear whether it found ADA accommodations irrelevant to section 3910 (if so, it failed to explain why) or that there was insufficient evidence on the issue. We direct the trial court on remand to consider the potential relevance of ADA accommodations for establishing incapacity within the meaning of section 3910.

12

him or her." [Citations.]' " (*Ibid*.; accord, *Jones*, *supra*, 179 Cal.App.3d at p. 1014; *Jessie V.*, *supra*, 214 Cal.App.3d at p. 1624.)

Here, however, the trial court found Robert lacked sufficient means because his current support was based on UCSD attendance. It also found insufficient means because minimum wage work would not allow Robert to live at his parents' level. Neither finding reflects the correct legal standard.

With respect to the finding on UCSD support, the trial court did not elaborate on its reasoning; we surmise it was responding to David's argument that Robert had his own means while enrolled at UCSD. Either way, the trial court was right in viewing the UCSD support as irrelevant, but for the wrong reason. It should have assessed Robert's ability to support himself and avoid becoming a public charge, regardless of UCSD support (which indisputably is temporary), not simply because those amounts required continued attendance. (See *Drake, supra*, 53 Cal.App.4th at p. 1154 [finding adult child's trust income, which could not bear his full support through death, did not discharge parent's obligation under section 3910].)[14]

The trial court's earlier finding regarding the parents' standard of living likewise ignored the appropriate standard and resulted from a misapplication of *Drake*. *Drake* addressed several issues, including the sufficient means standard and whether family court support guidelines applied to adult children. (*Drake, supra*, 53 Cal.App.4th at

---

[14] The record reflects the trial court later considered Robert's UCSD funds in calculating support. It may be appropriate to consider such amounts in that context. (*Drake*, *supra*, 53 Cal.App.4th at p. 1158 ["[I]n suitable circumstances, the trial court may adjust parental support obligations in light of a child's independent income."].)

13

pp. 1154-1163.)  The trial court suggested *Drake* found the guidelines reflect a legislative intent that children should share in their parents' standard of living, and, from this, reasoned that Robert's ability to get a minimum wage job did not prevent him from being without sufficient means.  Although *Drake* addresses this legislative intent in assessing the guidelines for *calculating* support, there is no parallel discussion in its analysis of sufficient means for *awarding* support.  (Compare *Drake*, *supra*, 53 Cal.App.4th at pp. 1157-1162 with *id.* at pp. 1154-1155.)  Rather, *Drake* made clear, as discussed *ante*, that sufficient means is determined based on the "likelihood a child will become a public charge." (*Id.* at p. 1154.)  The trial court failed to make this determination.[15]

## C.  *Sufficiency of the Evidence*

David contends there is no substantial evidence to support the court's order.  In reviewing for substantial evidence, we view the evidence in the light most favorable to the findings, give such findings the benefit of all reasonable inferences, and uphold the order if supported by substantial evidence.  (*Drake*, *supra*, 53 Cal.App.4th at p. 1151; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)  We find the order is not supported by substantial evidence.

First, the record lacks substantial evidence of incapacity.  It establishes Robert suffers from Tourette's syndrome and ADHD, conditions impacting his ability to manage

---

[15]    The trial court introduced its *Drake* analysis while purportedly discussing incapacity and later made an income-related capacity finding (i.e., viewing Robert's ability to have a $30,000 job questionable).  We assume the trial court simply switched focus, mid-discussion, and cited *Drake* for its sufficient means finding.  To the extent it relied on *Drake* in finding incapacity, we reject such reliance as well.

14

stress and attention and requiring accommodations at college.  It also shows Robert's stress and attention issues will be a major challenge for him in a job, meaning he would have trouble in a stressful work environment.  However, the record reflects that Robert's conditions are disorders, not disabilities.  Additionally, the record shows he is completing a degree at UCSD, living on his own in a dormitory (at least part of the time), and independently handling other aspects of adult life, such as driving and seeing his psychologist, Dr. Hogan, when needed.  Dr. Hogan believes he can work, at least in a low-stress workplace, as do his parents.  Robert himself plans to seek employment after finishing at UCSD.  This evidence does not support a finding Robert is incapacitated from earning a living.  (§ 3910, subd. (a); *Jones*, *supra*, 179 Cal.App.3d at pp. 1014-1015.)  As discussed *ante*, where incapacity is in dispute, the trial court must focus on whether the adult child is unable to find work or be self-supporting.  Vocational evidence likely will be necessary to meet these standards and there is little to no such evidence here.

Second, there likewise is no substantial evidence that Robert is without sufficient means.  The record reflects he potentially could hold a minimum wage job.  Given the possibility of at least this level of employment, we find there would need to be additional evidence regarding the likelihood of Robert becoming a public charge to support a finding of insufficient means.  (§ 3910, subd. (a); *Drake*, *supra*, 53 Cal.App.4th at p. 1154.)

15

III

DISPOSITION

The order is reversed.  We remand this matter to the trial court with directions that it determine if Robert is incapacitated from earning a living and without sufficient means within the meaning of section 3910.  The parties are to bear their own costs on appeal.


HUFFMAN, J.


WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

16