Filed 9/2/20  Marriage of Stevens CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of ILDIKO CSETO and ANDREW E. STEVENS. | B296878<br><br>(Los Angeles County Super. Ct. No. BD487938) |
| ILDIKO CSETO STEVENS,<br><br>        Appellant,<br><br>        v.<br><br>ANDREW E. STEVENS,<br><br>        Respondent. | |

APPEAL from orders of the Los Angeles County Superior Court, Christine Byrd and Audra Mori, Judges.  The order denying adult child support is reversed; the order granting reimbursement of adult child support and imposing sanctions is affirmed in part and reversed in part.

The Law Office of Herb Fox, Herb Fox; Law Offices of Ilene Kurtzman and Ilene Kurtzman for Appellant.

Howe Engelbert, Sarah Engelbert and Michelle Fay for Respondent.

_____

Family Code section 3910[1] imposes on a mother and father "an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means." Pursuant to section 3910, Ildiko Cseto Stevens petitioned the family court for an order requiring her ex-husband, Andrew,[2] to pay adult child support for their adult son, Armand, who suffers from severe autism spectrum disorder and Tourette syndrome. The court found Ildiko had failed to carry her burden under section 3910 to demonstrate Armand's incapacity for earning a living and his lack of financial means to be self-supporting. In a subsequent order the court granted Andrew's request for reimbursement of the adult child support he had paid pending the court's ruling on Ildiko's petition and imposed sanctions on Ildiko based on her refusal to voluntarily reimburse Andrew for the adult child support he had paid. Ildiko has appealed both orders.

On appeal Ildiko contends Andrew had expressly stipulated at trial to Armand's incapacity for earning a living, relieving her of the burden of proving it. She also contends the court's means finding is based on a misapprehension of Andrew's estate

_____

[1] Statutory references are to this code unless otherwise stated.

[2] Because the parties and their son share the same surname, for clarity we refer to them by their first names.

planning documents and is erroneous as a matter of law. We reverse the order denying Ildiko's section 3910 petition and remand for further proceedings. In light of our reversal of the order denying adult child support, we also reverse the court's reimbursement order. The family court's order imposing sanctions is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Prior Family Court Proceedings*

Ildiko and Andrew divorced in 2009 after 15 years of marriage. In a stipulated judgment entered in accordance with the parties' marital settlement agreement, Ildiko received the family residence in Beverly Hills and substantial commercial real estate holdings and agreed to forego spousal and child support. At the time of divorce Ildiko was 55 years old; Andrew, 85 years old; and Armand, 10 years old.

When Armand was 14 years old, Ildiko petitioned to set aside the stipulated judgment, arguing her waiver of child support violated public policy in California. The family court agreed and ordered Andrew to pay $4,248 in monthly child support until Armand turned 19 years old and to pay Armand's medical expenses until further order of the court. The court denied Andrew's request to order Ildiko to return the commercial real properties she received in the marital settlement agreement. Although Andrew had claimed the properties were transferred to Ildiko with the intent to provide for Armand's support and in consideration for Ildiko's child support waiver, the family court disagreed.[3] The court also imposed a lien of $1.1 million against

---

[3] The family court observed Andrew's transfer of properties was based not just on Ildiko's waiver of child support, but also

3

Andrew's real estate holdings to secure his child support obligation.

2. *The Prior Appeal*

Andrew appealed the postjudgment child support order, arguing, among other things, if the child support waiver was void, his transfer of properties to Ildiko in exchange for that waiver was also void. We affirmed the order setting aside the stipulated judgment and awarding Ildiko child support until Armand was 19 years old. (*In re Marriage of Stevens* (Jun. 20, 2017, B266179) [nonpub. opn.].) We also held the family court did not abuse its discretion in denying Andrew's request for an order compelling Ildiko to return the commercial real estate she had received in the marital settlement agreement. We reversed the order requiring Andrew to pay Armand's medical expenses indefinitely, explaining that adult child support in any form was governed by section 3910 and no petition for an award of such support had been filed. Moreover, although Ildiko had supplied her declaration that then-14-year-old Armand would never be able to live independently or be self-supporting, we observed a finding of future incapacity to earn a living required expert testimony and no admissible expert testimony had been submitted on that question. Because Andrew's obligation for minor child support would terminate in less than five years when

_____

her waiver of spousal support and agreement to abandon her claim to community property assets, which arguably included the properties transferred. In addition, Andrew no longer had custody of Armand and had stopped paying half of his medical expenses. For all these reasons, the family court found the equities favored Ildiko and denied Andrew's request to compel Ildiko to return the properties. (*In re Marriage of Stevens* (Jun. 20, 2017, B266179) [nonpub. opn.].)

4

Armand reached the age of 19 years, we reversed the order imposing a $1.1 million lien on Andrew's assets, holding the lien was not reasonable security for the limited period of minor child support remaining. We made clear that nothing in our opinion precluded Ildiko from filing a section 3910 petition when Armand approached his 19th birthday.

3. *Ildiko's Section 3910 Petition for Adult Child Support*

In February 2018, a few months before Armand's 19th birthday, Ildiko, as Armand's court-appointed conservator, filed a section 3910 petition seeking adult child support for Armand. She asserted Armand was incapable of living independently and his sole means of support was his $1,200 Social Security disability benefit. Ildiko also sought a lien on Andrew's real estate holdings to secure his adult child support obligation.

Glenn Stevens, Andrew's adult son from his previous marriage and Andrew's court-appointed guardian ad litem in these proceedings, responded to the petition, asserting, "[Ildiko had] failed to set forth admissible evidence pursuant to [section] 3910(a) that Armand Stevens is incapacitated or without sufficient means to be self-supporting [to] warrant the guideline support order requested."

4. *The Parties' Trial Briefs*

In her trial brief, filed prior to the evidentiary hearing on her petition, Ildiko requested adult child support pursuant to the statewide uniform guideline formula (§ 4055), an amount she stated ranged from $4,600 to $4,900 per month, plus $12,500 per month in add-on expenses (§ 4061, subd. (a)), one-half of the $25,000 per month cost for Armand's special needs therapies and other expenses Ildiko claimed were necessary for Armand's care. Ildiko further requested a security lien on Andrew's real estate

5

holdings, his only significant assets, valued at nearly $6 million, to prevent him from transferring those holdings to his two adult sons from his prior marriage and leaving Armand without support.[4]

In his trial brief Andrew conceded Armand was currently incapacitated and qualified for adult child support, but disputed Ildiko's assertion that Armand was without means to be self-supporting:  "Andrew stipulates that Armand is currently incapacitated from earning a living due to [a]utism and Tourette syndrome and qualifies for guideline child support.  Andrew does not stipulate that Armand is entirely without sufficient means."  Citing evidence of Armand's income from Social Security disability benefits and settlement funds Ildiko received for claims she had filed on Armand's behalf against two different schools Armand attended, Andrew asserted that, when all sources of income are considered, "Andrew's payment of child support should be reduced by $4,206, which in this case reduced [guideline] support payable by Andrew to $0."

   5.  *The Evidentiary Hearing on Ildiko's Petition*
      a.  *Identification of disputed and undisputed matters prior to trial*

At the start of the evidentiary hearing the court asked the parties to clarify the matters still in dispute.  The parties informed the court they had agreed on the amount of guideline support if adult child support were ordered—$4,486—but did not agree on Ildiko's requested add-ons or whether Armand had the means to be self-supporting within the meaning of section 3910.

---

[4]    Ildiko's own estate was valued at nearly $7 million.

6

They also disagreed on the necessity of a lien on Andrew's assets as security for any adult child support ordered.

Construing section 3910 as requiring "that an adult child be incapacitated permanently from earning a living," the court specifically inquired whether the parties were in agreement as to Andrew's permanent incapacity to support himself. Andrew's counsel responded, "[Andrew] agrees that Armand currently has an inability to be self-supporting because of the mental or physical disability." Pressed by the court as to whether that meant Andrew had agreed that Armand's incapacity was permanent, Andrew's counsel responded, "I hesitate to say that it's permanent because maybe it could change in 10 years. We don't know. But right now for the purposes, yes, he's not going to be able to work in the next five years or he's going—we believe he'll continue to be incapacitated." The court then identified the matter of Armand's permanent incapacity as disputed.

      b. *Ildiko's evidence*

Dr. Ann Simun, a neuropsychologist with an expertise in neurological assessment, testified as an expert witness. Dr. Simun knew Armand; she had provided assessments over the years and had worked closely with Ildiko to help her obtain educational and community services for Armand. Dr. Simun stated Armand suffered from Tourette syndrome with vocal and motor tics and "autism spectrum disorder without intellectual impairment, with language impairment." She explained Armand's disabilities were severe, and he required "very substantial support." Armand's communication scores reflected an age range of five-to-11 years old, while his "spontaneous level of communication" was that of a five or six year old. Dr. Simun opined, based on her own assessment and testing of Armand and

his communication and behavioral impediments, that Armand was unable to hold a job or be self-supporting. On cross-examination Dr. Simun acknowledged she was not board certified and had not repeated in 2018 several of the assessment tests she had given Armand in 2016 on which she now relied in forming her opinions.

Dr. Robin Bernhoft, a medical doctor with a specialty in general surgery and environmental medicine, testified as Armand's treating physician and an expert in environmental medicine, including food allergies and digestive problems. Dr. Bernhoft acknowledged he was not an expert in autism or Tourette syndrome and had not diagnosed Armand. Viewing autism as an environmental disease, Dr. Bernhoft treated Armand with nutritional supplements and chelation therapy.[5] He believed his treatments had been very effective. They were not covered by insurance.

Ildiko testified Armand was severely disabled and required around-the-clock care and support. Ildiko explained Armand suffers from extreme sensitivity to touch, noise and light; bouts of unprovoked tantrums and aggression; and verbal and physical tics. According to Ildiko, the costs to care for Armand, including speech therapy, neurofeedback therapy and chelation therapy, as well as full time caregivers, all of which she insisted were necessary, ranged from $18,000 to $22,000 per month. She acknowledged that she had received a settlement award on Armand's behalf in the net amount of $126,512 (exclusive of

---

[5] "Chelation therapy involves the intravenous infusion of a substance which binds with metals to remove them from the body." (*United States v. Lawrence* (10th Cir. 2005) 405 F.3d 888, 894, fn. 1.)

attorney fees) and that, pursuant to the court order entered after the settlement, she was entitled to withdraw up to $12,000 per month for Armand's benefit. Ildiko testified she received the settlement funds two months prior to the trial in this case (and for that reason had not included the funds in her financial disclosures) and had already withdrawn the maximum monthly amounts to date for a down payment for a Cadillac Escalade for Armand's caregiver and for a three-week trip to Mexico for Armand and her. Ildiko insisted both purchases were for Armand's safety and well-being. Ildiko testified $50,000 remained in the settlement account at the time of trial and an additional $35,000 was expected to be deposited by the school district in accordance with the settlement terms. Ildiko attributed inconsistencies in her claimed expenses from petition to deposition to trial to Armand's evolving needs.

        c. *Andrew's evidence*

Dr. Dana Chidekel, a board certified neuropsychologist, testified as an expert in neuropsychological assessments. Based on her review of Armand's medical and educational records and Dr. Simun's testimony, Dr. Chidekel agreed that Armand suffered from autism and Tourette syndrome and was severely disabled. However, based on the prevailing medical research, Dr. Chidekel opined that certain services Armand was receiving, including neurofeedback therapy and speech therapy, were not helpful to Armand and would not ameliorate his disabilities.

Glenn Stevens testified that Andrew had created a revocable living trust, which, as amended in 2008, was funded with multiple real estate properties and $50,000 in cash. Andrew was the trustee but Glenn managed the trust as the holder of his father's general power of attorney. Upon Andrew's

9

death Glenn and his brother would receive all the real estate properties in the trust. The balance of trust assets, except for any additional specific gifts of personal property identified by Andrew, was to be held in trust for Armand's lifetime pursuant to Article Six of the trust instrument.

Based on paragraph 6.1 of Andrew's trust, Glenn contended his father had created a special needs trust for Armand's support. Paragraph 6.1(a) authorized the trustee of the trust after Andrew's death to pay from the remaining trust assets, for Armand's benefit, "as much of the income and principal of the trust as the trustee deems proper for Armand's comfort, welfare and happiness. . . . All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone." Glenn acknowledged that, as a real estate attorney, he was not an expert in trust law and that his belief that Andrew had created a special needs trust for Armand was based solely on his reading of the trust document. Andrew, meanwhile, had testified in 2015 that he had provided for Armand in the marital settlement agreement and intentionally had not provided for him in his estate plan. At the evidentiary hearing Glenn surmised Andrew must have forgotten about the special needs trust.

Glenn also testified that Andrew had recently sold one of his real estate holdings (the Varner Road property) in exchange for a $1.7 million promissory note that, while providing for periodic payments amortized over 30 years, was due in full in five years. He suggested the proceeds from the note would belong to Armand as a beneficiary of the cash assets of the trust, although nothing in the trust document explicitly provided those

10

funds would be available for Armand's benefit. At the very least, Glenn posited, the proceeds from the sale of that property could be pledged as security for any adult child support obligation Andrew was ordered to pay without the court having to impose a lien on, and inhibit Andrew's ability to sell, any of his properties.

### d. *Closing arguments*

In closing argument Ildiko's counsel urged the court to award Armand adult child support in the stipulated guideline amount of $4,486, plus an additional $9,000 in add-on expenses (one-half of $18,000 in add-on expenses that Ildiko had claimed at trial) and to impose a $3 million lien on Andrew's real estate holdings to secure his support obligation.

Consistent with Andrew's stipulation in his trial brief and at the beginning of trial, Andrew's counsel did not address Armand's incapacity during her closing argument, focusing instead on Armand's means for support and the necessity of a security lien. After challenging the necessity of all of Ildiko's requested add-on expenses and highlighting the bias and credibility deficiencies of Ildiko's expert and lay witnesses, Andrew's counsel urged the court "to issue adult child support pursuant to the agreed upon guideline amount, to reduce that amount by $1,206 [for Social Security disability payments to Armand] pursuant to [section] 4504, to further reduce that amount by . . . a discretionary amount related to Armand's separate estate, and . . . to not order add-ons, unless they are medically necessary and reasonable pursuant to [section] 4063, and the process in [section] 4603 is followed. And, finally, that no security be issued."

11

6. *The Court's Statement of Decision and Ildiko's Objections*

After a five-and-a-half day trial that included multiple witnesses and exhibits, the court found Ildiko had failed to carry her burden of proof under section 3910 as to both Armand's incapacity to earn a living and his lack of sufficient means to be self-supporting. Based on our explanation in the prior appeal that proof of future section 3910 incapacity required expert testimony, the court ruled Ildiko's two experts had failed to present the necessary expert opinion concerning Armand's permanent incapacity to earn a living. Specifically, the court found Dr. Bernhoft, who was not an expert on Tourette syndrome or autism spectrum disorder, was not qualified to opine on whether those disabilities rendered Armand incapacitated to earn a living. As for Dr. Simun, the court rejected her testimony with a scathing critique: "[She provided] no baseline scores, no comparison of earlier scores with current scores, no peer scores, and no comparison with peer scores. Dr. Simun did not even identify who constituted the peers used for comparison. Her underlying diagnosis of Armand shows the same flaws. She described her general methodology, which included both direct observations and testing by her and also subjective views from 'collaterals' (Petitioner and other adults who worked with Armand)[,] . . . but she did not specify the information underlying the first diagnosis or compare it to the information underlying her current diagnosis nor did she specify the weight given to recent information as compared to information from earlier periods of time, nor did she specify the weight given to her own direct observations and testing as compared to the subjective information provided by others. In sum, her opinion on Armand's diagnosis and his disability lacks the evidentiary basis required

12

by *Sargon* [*Enterprises Inc. v. University of Southern California* (2012) 55 Cal.4th 747], which is to show the basis of an opinion and the reasoning behind it." The court continued, "[Dr. Simun's] demeanor, tone and facial expressions were condescending and unprofessional. She gave the impression of being eager to appear expert but reluctant to provide details on her opinion. After having testified in many actions for Armand before, she appeared to be biased and invested in the outcome here, not neutral."

The court also found Ildiko had not carried her burden to show Armand was without sufficient means to be self-supporting, citing the $225,000 Armand had received in settlement funds and Andrew's "special needs trust" for Armand, which the court described as funded by assets totaling $5.9 million as of June 2018. Because there was no right to adult child support, the court continued, there was no basis for a security lien on Andrew's assets.

Ildiko filed 32 objections to the court's statement of decision. Among other things, Ildiko argued Andrew had conceded Armand's current incapacity to earn a living, relieving her of that burden of proof at trial. She also asserted the court had erred in construing section 3910 to require proof of permanent incapacity. The court overruled all of Ildiko's objections.[6]

---

[6]   In rejecting Ildiko's objection that section 3910 did not require permanent incapacity, the family court stated, "To the extent that the legal standard was articulated incorrectly, it was by Petitioner," who had insisted Armand's incapacity to earn a living was permanent. In addition, quoting from its statement of decision that the "'evidence [was] insufficient to establish by a preponderance of the evidence that Armand is incapacitated from

13

7. *Andrew's Request for Reimbursement of Adult Child Support and Request for Sanctions*

Following the court's ruling, Andrew requested reimbursement for the adult child support he had paid and sanctions pursuant to section 271 based on Ildiko's refusal to voluntarily reimburse him for those payments. Ildiko opposed both requests, asserting Andrew's adult child support payments were voluntary and he had waived any claim to reimbursement.

The court granted Andrew's request and ordered Ildiko to reimburse Andrew $7,369.50 (the $28,276.50 he had paid to Ildiko for adult child support in October, November and December 2019, offset by $20,907 Andrew owed to Ildiko in connection with a separate order). The court also imposed sanctions on Ildiko pursuant to section 271 in the amount of $5,000.

Ildiko filed timely notices of appeal from the court's order denying her section 3910 petition and the order granting Andrew's requests for reimbursement and sanctions. We consolidated the two appeals.

## DISCUSSION

1. *Standard of Review*

We generally review a trial court's order granting or denying child support for abuse of discretion. (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151 [adult child support pursuant to section 3910].) "Under this standard, we consider only 'whether the court's factual determinations are supported by

_____

earning a living within the meaning of Fam. Code[, § ]3910,'" the court stated it had applied the correct standard.

14

substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] 'We do not substitute our own judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'" (*Macilwaine*, at p. 527.)

However, when the trial court finds the party who bore the burden of proof at trial failed to carry his or her burden, the question on appeal is whether the evidence compels a finding in favor of the appellant as a matter of law. (*Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 647 ["'[o]n appeal from a determination of failure of proof at trial, the question for the reviewing court is "'whether the evidence compels a finding in favor of the appellant as a matter of law'"'"]; *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [same]; see *In re R.V.* (2015) 61 Cal.4th 181, 201 [in determining whether the evidence compels a finding as a matter of law, "the inquiry on appeal is whether the weight and the character of the evidence . . . was such that the [trial] court could not reasonably reject it"]; *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270 [same].)

When the court's failure of proof finding is based on its interpretation of the governing law or construction of a legal instrument on undisputed evidence, our review of that determination is de novo. (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183 [statutory interpretation]; *Faus v. City of Los Angeles* (1967) 67 Cal.2d 350, 361 [legal instrument].)

2. *Governing Law*

Section 3910 requires proof of two elements: (1) The adult child lacks the capacity to earn a living; and (2) he or she is

15

without sufficient means to be self-supporting. (*In re Marriage of Cecilia & David W.* (2015) 241 Cal.App.4th 1277, 1285.) The first prong of section 3910, incapacity to earn a living, requires demonstration of "'an inability to be self-supporting because of a mental or physical disability or proof of inability to find work because of factors beyond the child's control.'" (*Ibid.;* accord, *In re Jessie V.* (1989) 214 Cal.App.3d 1619, 1623.) The second, lacking sufficient means, is "'resolved in terms of the likelihood a child will become a public charge.'" (*Cecilia & David W.*, at p. 1286; accord, *In re Marriage of Drake, supra,* 53 Cal.App.4th at p. 1154; see *Cecilia & David W.*, at p. 1286 ["'duty to support children of any age is legislatively designed "to protect the public from the burden of supporting a person who has a parent . . . able to support him or her"'"].)

3. *Andrew Stipulated to Armand's Incapacity To Earn a Living; Ildiko Had No Burden To Prove That Stipulated Fact at Trial*

Andrew concedes he stipulated at trial to Armand's current incapacity to earn a living. However, he contends that stipulation did not cover the duration of Armand's incapacity, which Ildiko asserted was permanent. That is true; but nothing in section 3910 requires incapacity to earn a living be permanent to qualify for adult child support. (See *Rebensdorf v. Rebensdorf* (1985) 169 Cal.App.3d 138, 143 [interpreting identical language in former Civil Code section 206, the predecessor to Family Code section 3910; "[t]he inability to maintain oneself by work need not be the result of a permanent condition [citation] [as] [t]he court retains the power to modify its award if circumstances change"].)

To be sure, the duration of Armand's incapacity to earn a living is, as Andrew asserts, relevant to an evaluation of

16

Armand's means to be self-supporting, but that is a matter addressed to the second prong of section 3910. As to the first prong, Andrew's stipulation that Armand lacked the current capacity to be self-supporting relieved Ildiko of the burden at trial to prove Armand's incapacity to earn a living. (See *People v. Farwell* (2018) 5 Cal.5th 295, 300 [defendant's stipulation to existence of fact conclusively establishes the fact in question, relieving the party of burden to prove it]; *People v. Dyer* (1988) 45 Cal.3d 26, 75 [attorneys are entitled to rely upon a stipulation and to refrain from producing evidence to prove the stipulated fact]; *Harris v. Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447, 452-453 [by stipulating to the existence or nonexistence of a fact, the parties eliminate the need to present evidence on the matter]; see also *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752 ["oral statement by counsel in same action is a binding judicial admission if the statement was an unambiguous concession of a matter then at issue and was not made improvidently or unguardedly"].) In ruling that Ildiko had failed to carry her burden of proving Armand's incapacity, the court erred as a matter of law.

4. *The Court's Means Analysis Was Flawed as a Matter of Law*

As discussed, the question of an incapacitated adult child's means to be self-supporting under section 3910 is evaluated by considering the likelihood he or she will become a public charge without parental support. (*In re Marriage of Cecilia & David W., supra*, 241 Cal.App.4th at p. 1286.) In concluding Armand had sufficient means to be self-supporting, the court relied largely on (1) the $225,000 in settlement funds Armand received (an amount the court recognized netted Armand $126,512 after

17

deduction of attorney fees), and (2) Andrew's establishment of a special needs trust for Armand that the court stated was valued at $5.9 million as of June 2018.

The propriety of the court's consideration of what it characterized as the "modest amount" of Armand's settlement funds is beyond dispute. However, the court erred in relying on the purported availability to Armand of millions of dollars in a special needs trust for its finding that he had the means to be self-supporting.

The trust instrument indisputably showed that Andrew had not created a trust (special needs or otherwise) to benefit Armand during Andrew's lifetime. (See *Laycock v. Hammer* (2006) 141 Cal.App.4th 25, 30 [in interpreting trust, courts "look[] to the express terms of the trust instrument"]; *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206 [same].) That is, Andrew's revocable trust provided for no disbursements to Armand while Andrew was alive. Moreover, as a revocable instrument, there was no guarantee of any distributions following Andrew's death; Andrew retained the right to amend the trust and eliminate the provisions permitting use of its remaining cash assets for Armand's benefit following Andrew's death. (See *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1066 ["Property transferred into a revocable inter vivos trust is considered the property of the settlor for the settlor's lifetime. Accordingly, the beneficiaries' interest in that property is merely potential and can evaporate in a moment at the whim of the [settlor]," internal quotation marks omitted].)[7]

---

[7] Even if Andrew were found to be incompetent, a fact suggested by the appointment of a guardian ad litem in these proceedings, Glenn testified he was the holder of Andrew's

18

In addition to uncertainty based on the trust's revocability, Andrew and Ildiko disagree on the amount in the trust that would be available for Armand's benefit on Andrew's death. While conceding the court erred in concluding the value of those assets was $5.9 million,[8] Andrew suggests the proceeds from the promissory note from the sale of the Varner Road property valued at $1.7 million would be considered personal property assets in Andrew's trust on Andrew's death. Ildiko, on the other hand, observes that nothing in the trust suggests that the proceeds from the sale of real property specifically designated for Andrew's other adult children would be available for Armand's support. We need not resolve that dispute. The parties agree, and the language of the trust is clear, that Armand receives no trust disbursements during Andrew's lifetime and no guarantee of any trust assets on Andrew's death. Because the court's finding that

---

general power of attorney with the power to manage and withdraw trust property. (See Prob. Code, § 15803 ["[t]he holder of a presently exercisable general power of appointment or power to withdraw property from the trust has the rights of a person holding the power to revoke the trust that are provided by [Probate Code] Sections 15800 to 15802, inclusive, to the extent of the holder's power over the trust property"]; Cal. Law Revision Com. com. foll Prob. Code, § 15803 ["[t]his section makes clear that a holder of a power of appointment or a power of withdrawal is treated as a person holding the power to revoke the trust for purposes of Sections 15800-15802 in recognition of the fact that the holder of such power is in an equivalent position to control the trust as it relates to the property covered by the power"].)

[8] Andrew acknowledges it was his entire estate that was valued at $5.9 million, not the assets potentially available to Armand as a trust beneficiary.

19

Armand had sufficient means to be self-supporting was based, in large measure, on an erroneous interpretation of Andrew's trust, the denial of Ildiko's section 3910 petition on the ground Armand had sufficient means to be self-supporting cannot stand.

5. *The Order of Reimbursement Is Reversed*

The court's order that Ildiko reimburse Andrew $7,369.50 ($28,276.50 in adult child support paid, offset by $20,907 for Andrew's failure to comply with an April 2019 order to pay Ildiko $20,907) was based on the court's denial of Ildiko's section 3910 petition. Because the order denying the section 3910 petition is reversed and the matter remanded for further proceedings, the order of reimbursement is also reversed.

6. *The Court's Sanction Order Is Affirmed*

The court also imposed $5,000 in sanctions on Ildiko pursuant to section 271 for Ildiko's refusal to voluntarily reimburse Andrew for the adult child support he paid pending the court's resolution of Ildiko's petition. (See § 271 [the court may, in its discretion, award attorney's fees and/or costs as a sanction for party's litigious conduct designed to frustrate cooperation between parties]; *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152 ["'imposition of sanctions under section 271 is committed to the sound discretion of the trial court'" and reviewed for abuse of discretion].) Ildiko has not argued, let alone demonstrated, the court abused its discretion in awarding section 271 sanctions.

## DISPOSITION

The order denying Ildiko's section 3910 petition is reversed. On remand the family court shall consider Armand's means to support himself within the stipulated length of his incapacity or until further order of the family court and determine the amount

20

of support to be awarded and the necessity of a lien on Andrew's assets to secure that support obligation.  The order granting Andrew's request for reimbursement of adult child support payments is reversed, subject to reinstatement if the court finds no adult child support is warranted.  The order awarding Andrew sanctions under section 271 is affirmed.  Ildiko is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.


21